# MIMS *vs.* STURDEVANT AND WIFE.

[PROCEEDING IN PROBATE COURT TO CHARGE EXECUTOR WITH SLAVE NOT INCLUDED IN INVENTORY.]

1. *Conclusiveness of judicial decisions.*—After a judgment of the probate court has been twice reversed on error, and the cause remanded for further proceedings, the appellate court will not, on a third appeal, consider the question whether the probate court had jurisdiction of the proceeding; that question having been implicitly involved in the former decision, although the point was not then directly made.

2. *Mode of impeaching witness.*—A party, against whom the deposition of a witness has been read in evidence, can not prove, by the subsequent unsworn declarations of the witness, "that he was drunk when his deposition was taken, that he did not know what he had sworn, that he knew nothing about the facts to which he had testified, and that the commissioners wrote down what they pleased."

3. *Admissibility of evidence of absent witness on former trial.*—The permanent absence of a witness from the State authorizes the admission of his testimony as given on a former trial of the cause.

4. *Refreshing memory of witness ; admissibility of memorandum.*—A witness who made a written memorandum of facts at the time of their occurrence, and who testifies that he knew the memorandum to be correct when he made it, though he does not now remember the facts, may read the memorandum to the jury as a part of his evidence.

5. *Admissibility of decision of presiding judge on former trial.*—On the trial of an issue before the probate court, the opinion and decision of the presiding judge on a former trial is not admissible evidence.

6. *Relevancy of evidence on question of title to slave.*—On the trial of an issue between an executor and some of the legatees under the will,

the issue being whether the slave in controversy belonged to the executor individually or to the testator, the fact that the testator "was not in the habit of buying property without first seeing it," is relevant and admissible evidence for the executor.

7. *Same.*—In such case, the legatees having proved that the slave was employed on the testator's premises, the executor may prove, in rebuttal, that he permitted his slaves to work on the testator's premises.

8. *Form of judgment.*—In a proceeding before the probate court, by which the legatees seek to charge the executor with the value of a slave not included in his inventory ; the jury having returned a verdict against the executor, assessing the value of the slave at a specified sum,—the court can not render a judgment against the executor, for the assessed value of the slave.

APPEAL from the Probate Court of Covington.

In the matter of the estate of Britton Mims, deceased, on the suggestion of Willis Sturdevant and wife that the executor, Stanford Mims, had not made a full inventory of the property belonging to the estate, but had failed to charge himself with a slave named John, whom the executor claimed as his own property. The proceeding was commenced in the orphans' court of Monroe county, in September, 1846; and a judgment was rendered by that court, without the intervention of a jury, in November, 1852. This judgment was reversed by this court, on writ of error sued out by the executor, at its June term, 1853, and the cause was remanded.—See the case reported in 23 Ala. 664. After the remandment of the cause, it was transferred to the probate court of Butler, and thence to the probate court of Covington, where a trial was had before a jury in November, 1857.

"On the trial before the jury," as the bill of exceptions in the present record states, "the plaintiffs introduced and read to the jury, with other testimony, the deposition of Hillary Mims, who testified, among other things, that he had heard the defendant repeatedly say that he had bought the slave in controversy for his father, Britton Mims, and with his father's money. To contradict the influence of this proof, the defendant offered to prove, that said Hil-lary Mims had publicly stated, after his said deposition

had been taken, that he was drunk when said deposition
was taken; that he did not know what he had sworn;
that he knew nothing about the case; that the commis-
sioners wrote down what they pleased; and that he never
heard the defendant say that said slave belonged to his
father, or that he had bought him with his father's money.
The defendant further proved, that he had made every
possible effort, so soon as he learned this fact, to have said
witness re-examined, and questions propounded to him
about these matters; and that said witness left the State
before he could do so, and was still absent. To rebut this
proposed proof, the plaintiffs read in evidence the deposi-
tions of the commissioners by whom the deposition of
said Hillary Mims was taken, and who testified, that said
Hillary was sober when they took his deposition; that his
answers to the interrogatories were taken down by them
in his own language, as nearly as possible, and were then
read over to him, and that he assented to their correct-
ness. In this connection, the plaintiffs objected to what
the defendant had proposed to prove, because no predicate
had been laid for the purpose of impeaching said witness;
the court sustained the objection, and the defendant ex-
cepted."

"The plaintiffs also introduced the deposition of S. J.
Cumming, for the purpose of proving, among other things,
what one Hardin, a witness for plaintiffs, had sworn on a
former trial of this cause." Said Cumming testified, in
substance, that on the former trial, before the probate
court of Monroe, he was one of the plaintiffs' attorneys,
and took notes of the testimony of said Hardin, as given
on that trial; that he had no recollection of the testimony
of said witness, except as shown by his notes, (which were
made an exhibit to his deposition,) but was fully satisfied
that said notes contained a true statement of the entire
testimony of said Hardin on that trial; and that Hardin
had since removed to Texas, but he (Cumming) had not
been able to find out his place of residence. The defend-
ant objected to the admission of Cumming's notes as evi-
dence, "because they were incompetent evidence, and be-
cause no copy of them was filed with the interrogatories,

or served on the defendant, before said witness was examined"; and also moved to exclude from the jury "all the testimony of said Cumming in relation to what said Hardin had sworn, because (there being no other evidence on the point) it did not show a sufficient ground for the absence of the witness, or the failure to take his deposition; and because the witness had no independent recollection of the facts to which he testified, aside from his notes." The court overruled all these objections, and admitted the evidence; and the defendant excepted.

"The defendant further offered to prove, that Britton Mims, in his life-time, was not in the habit of buying property, without first seeing it. The plaintiffs objected to this evidence; the court sustained the objection, and ruled out the evidence; and the defendant excepted.

"Together with other testimony in the cause, was the deposition of the probate judge of Monroe county, before whom this cause had been once tried, and who had decided it, without a jury, in favor of the plaintiffs. The object in examining said witness was, to prove what one Andrews, who had since died, had sworn before him on the former trial. The plaintiffs propounded to said witness the following interrogatory : 'If this cause was ever tried before you, state how you decided it'; to which the witness answered, 'I decided, that the slave in controversy was the property of Britton Mims at the time of his death, and that the value of said slave at that time was $900.' To this question and answer, each, the defendant objected, and moved to exclude the same from the jury; the court overruled the objection, and the defendant excepted.

"For the purpose of explaining Britton Mims' possession of the slave, (the proof showing that said slave was sometimes in the possession of Britton Mims, and sometimes in the possession of the defendant,) the defendant offered to prove, that he permitted his negroes to work at his father's house. The court excluded this evidence, on the plaintiffs' objection, and the defendant excepted."

The jury returned a verdict for the plaintiffs, and assessed the value of the slave at $700; and the court thereupon rendered judgment, "that the plaintiffs recover of

the defendant the said sum of $700, so assessed by the jury, together with the costs," &c.

The several rulings of the court to which exceptions were reserved, and the judgment rendered on the verdict, are now assigned as error; and the last assignment is, that the whole proceeding is void for want of jurisdiction.

Wm. P. Chilton, with Adams & Herbert, for appellant. Watts, Judge & Jackson, contra.

A. J. WALKER, C. J.—This was a proceeding instituted by suggestion in the orphans' court, in 1846, by a legatee, for the purpose of obtaining a judicial ascertainment that a certain slave, not included in the inventory, belonged to the testator's estate; and of further obtaining a judgment that the executor should stand chargeable with the same, as a part of the estate. It is urged now in this court, that the orphans' court had no jurisdiction of the proceeding, disconnected as it is from a settlement of the administration upon the estate; and that this court ought now to reverse the decree of the court below, and render a judgment dismissing the entire proceeding. We do not now determine what ought to be the decision of this court upon the question of the jurisdiction of the orphans' court, if it were presented to us unembarrassed by the previous decisions in this case. As bearing upon that question, we refer to the cases of Dobbs v. Cockerham, (2 Porter, 328,) and Merrill v. Jones, (8 Porter, 557.) This case has been twice before in this court; once at the June term, 1850, and again at the June term, 1853. The decision in the case when it was first in this court, is not reported. The decision made when the case was here the second time, is reported in 23 Ala. Rep. 664. In both instances, the judgment or decree of the court below was reversed, and the cause remanded. The two judgments of this court, reversing and remanding the cause to be further proceeded in, involved the assertion that the court below had jurisdiction of the subject-matter; for the judgment rendered was manifestly improper, if the court below had no jurisdiction. The decision of this court, thus

virtually asserting the jurisdiction of the court below, is the law of this case, and we cannot rule in opposition to it.—Matthews, Finley & Co. v. Sands, 29 Ala. 136; Skillerns v. Mays, 6 Cr. 267.

[2.] The court below did not err in excluding evidence of the unsworn declarations of the plaintiffs' witness, as to the manner in which his testimony was taken, his condition at the time, and his knowledge of the facts proved by him.

[3.] This court decided in Long v. Davis, (18 Ala. 801,) that a permanent absence from the jurisdiction on the part of a witness will authorize the reading of his testimony given in a former trial of the cause. Such, we have no doubt, is the correct rule in civil causes.—1 Greenleaf on Ev. § 163, note; 1 Phil. Ev. (C. & H.'s notes,) 393, 394; Finn's case, 5 Rand. 701.

[4.] Notwithstanding there is a contrary tendency in our past decisions, we think it a proposition both reasonable and sustained by authorities, that a witness who has made a written memorandum of facts presently upon their occurrence, and who does not remember the facts, but is able to swear that he knew the memorandum to be correct when he made it, may read the memorandum as a part of his evidence to the jury.—Holmes v. Gayle & Bower, 1 Ala. 517; Vastbinder v. Metcalf, 3 Ala. 100; Downer v. Rowell, 1 Ver. 343; 2 Phillipps on Ev. (C. & H.'s notes,) (4th Am. ed.) 918; 1 Green. on Ev. §§ 437, 438; Burton v. Plummer, 2 Ad. & El. 341. We do not decide, upon the record before us, whether the memorandum made by the witness Cumming, of what Hardin swore upon a former trial, should have been read to the jury. The principles which we have laid down above will be sufficient to guide the court upon a future trial, in determining upon the admissibility of the evidence. If there be any deficiency in the testimony of Cumming, it will probably be supplied on a future trial.

[5.] The opinion given by the probate judge upon a former trial was not, upon any principle known to us, admissible in evidence.

[6.] The habit of Britton Mims, as to not purchasing

property without seeing it, in connection with the peculiar circumstances of this case, may have some bearing upon the question of fact in the case; and we decide, with some hesitation and doubt, that it was competent evidence for the executor, and against one asserting the title of Britton Mims.

[7.] The evidence proposed by the defendant, as to his permitting his slaves to labor on his father's premises, should have been admitted. It contributed to explain the plaintiffs' evidence, that the slave John had been employed on the premises of the defendant's father.

[8.] The court erred in rendering judgment for the value of the slave against the defendant. Such a judgment is foreign to the purposes of the proceeding. If such a judgment could be rendered in this proceeding, the defendant would be deprived of all opportunity to show that the slave was required to pay debts, or for other legitimate purposes incident to the administration. The only judgment which can be rendered in the case is, that the slave belonged to the decedent, and is a part of the assets of the estate, and that the representative stands chargeable with him as such.

Reversed and remanded.