# CASES

## IN THE

# SUPREME COURT OF ALABAMA

### NOVEMBER TERM 1914-15

## Morris v. The State.

### Murder.

(Decided January 21, 1915. Rehearing denied May 13, 1915.
68 South. 1003.)

1. *Trial; Time; Constitutional Right.*—Where the defendant was fully heard by himself and counsel at the trial, and no application was made for process for any witness, or offer of showing for absent witnesses, and no claim was made that he was deprived of any evidence, or that evidence other than that introduced was obtainable, he was not deprived of any constitutional right because of the fact that he was indicted on the night following his arrest on the afternoon of the murder, and was arraigned and required to plead a few minutes after the indictment was returned, and was placed on trial within forty-eight hours thereafter; the presumption being in favor of the action of the trial court in the absence of a contrary showing.

2. *Jury and Jurors; Grand Jury; Special.*—The trial court has authority under section 7259, Code 1907, to order and organize a special grand jury after the first grand jury had been discharged, the provisions of said section not being repealed either expressly or by implication by Acts 1909, p. 317, section 32.

3. *Same; Venire; Special; Quashing.*—The fact that only the initials of the veniremen appeared on the list served on defendant was not of itself sufficient to require that the venire be quashed; such not being one of the grounds provided by section 29, Acts 1909, p. 317.

4. *Homicide; Evidence; Threats.*—Where it appeared that deceased was instrumental in having a warrant issued for defendant, and that this was the motive of the killing, the testimony of a witness that defendant said that he expected to "get him a man, if a warrant was issued for him," was admissible, although the person killed was a' women; the question whether such a statement constituted a threat by defendant against deceased being properly for the determination of the jury.

1—193

5. *Same; Res Gestae.*—The physical condition of deceased at the time of the killing was a part of the res gestae and admissible to aid the jury in determining the grade of the punishment.

6. *Witnesses; Impeachment; Defendant.*—Where a defendant voluntarily takes the stand to testify as a witness he is subject to impeachment as other witnesses by proof of his general bad character.

APPEAL from Tallapoosa Circuit Court.

Heard before Hon. S. L. BREWER.

Early Morris was convicted of murder and given the death penalty and he appeals. Affirmed.

BULGER & RYLANCE, for appellant.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for State.

MAYFIELD, J.—The defendant was indicted for murder (uxorcide), convicted, and given the death penalty.

It appears that he was arrested on the afternoon of October 8, 1913, and was indicted by a special grand jury that night, and arraigned and required to plead a few minutes after the indictment was returned, and was put on trial within less than 48 hours after indictment found. Whatever else may be said of this proceeding, it was certainly speedy. The bill of exceptions contained the following recitals—and nothing more—as to this speedy action: "Be it remembered, that at the fall term, 1913, of the circuit court of Tallapoosa county, at Dadeville, on the 10th day of October, the following proceedings were had not otherwise appearing of record: In open court Wednesday night October 8, 1913, defendant was arraigned and case set for trial October 10, 1913. The defendant objected to being required to plead at this time, because the indictment was not returned until about 8:15 p. m. October 8th, and the de-

fendant was not arrested until the afternoon of October 8th, and had not had an opportunity to confer with counsel and prepare his plea. Also upon the further ground that the short time intervening between the time of his arraignment and the time of his trial was not sufficient to authorize him to prepare for trial properly. The court overruled the objections and the defendant then and there duly excepted to such ruling of the court."

(1) The question presented is: Can this court say, as matter of law, that the trial court erred in overruling the defendant's motion? Is it thereby made to appear that the accused was deprived of any of his constitutional rights secured to him by the Bill of Rights? Can this court say, from this record, that the accused was denied "due process of law?" One of the express constitutional guaranties to accused persons in criminal cases is the right to be heard in the courts by self and counsel; another is the right to compulsory process for their witnesses. To put a defendant on trial for a grave crime, without an opportunity to obtain or confer with counsel, and without opportunity for obtaining his witnesses, in effect might be to deny him the two express constitutional rights above mentioned. It is possible that, to put a defendant on trial immediately after his arrest or accusation, or to deny to him any continuance or postponement of the trial, would be to deny him these rights.

On the subject of allowing the accused to be heard by counsel, this court, in *Peagler's Case,* 110 Ala. 11, 14, 20 South. 363, said: "The Constitution does not specify the time nor the number of counsel, to which a person accused by a criminal prosecution is entitled. It provides that 'he has a right to be heard by himself

and counsel or either.' The provision guarantees him the right to be heard on all questions of law and fact which may arise at any time during the prosecution, and it implies that he shall have full opportunity and time as justice and the necessities of the case may require. Necessarily the trial court is invested with a large and very responsible discretion in determining and affording to the accused the full measure of his constitutional right. Like any other adjudication by the trial court, involving the rights of a party on trial, its judgment is revisable by this court. When the question is presented here, we determine whether the discretion has been abused, whether the party has been deprived of his right to be fully heard, as provided. Where the right has been wholly denied, or action taken in the absence of the accused, the duty of this court is plain. But where the question depends upon the manner in which a discretion has been exercised, the duty of this court in reviewing the conclusion of the trial court is often difficult."

In *Yeldell's Case*, 100 Ala. 26, 29, 14 South. 570, 46 Am. St. Rep. 20, the court, after reviewing the authorities on this subject—one line holding that the discretion of the trial court is reviewable, and the other, that it is not—said: "These two cases present extremes of the doctrine, and neither meets our approval. The correct and just principle, sanctioned by reason and authority, lies between these extremes. Courts are established for the administration and promotion of justice. If time and patience are not accorded a defendant, proceeded against in a cause in which his life or liberty is endangered, this high end and aim of the court would be subverted. If time is valuable and is pressing, if patience has been sorely taxed, any just judge will be

careful, yet, to allow full and fair opportunity to counsel to present his client's defense. This much is guaranteed in the Constitution, and no more; and this guaranty is not inconsistent with the existence of power in the court to regulate the exercise of the right of argument by reasonable rules and regulations. Counsel have no more right, from whatever motive, unnecessarily to waste the time of the court, in improper and unnecessary speech, than the court has to deprive them of reasonable opportunity to make defense for their clients. Should they abuse their privilege in this regard, it is the right and duty of the court to restrain them within proper and legal bounds."

In *Walker's Case,* 117 Ala. 85, 88, 34 South. 670, where the court had refused to postpone or continue the trial of a criminal case, and it was insisted that the accused was denied his constitutional right, the court said: "The rule of practice as to continuance cannot be so applied as to contravene the seventh section of the Bill of Rights, art. I, of the Constitution, sec. 7, which declares that in criminal prosecutions the accused has a right 'to have compulsory process for obtaining witnesses in his favor.' The record states that the defendant requested the court to set the case down for a day later of the term, and to grant him compulsory process for his absent witnesses. These witnesses had been regularly summoned, and had failed to attend. No convenience of the court, nor any condition of the docket of the cases for trial, can authorize the denial of this right of the accused, guaranteed to him by the Constitution of the state. There are two reasons why the action of the court must be sustained in the present case. In the first place, no showing was made that the absent witnesses were within the jurisdiction

of the court, and there was no exception to the ruling of the court. We are of opinion that to entitle a party to compulsory process, the court has the right to require from him a showing as to the facts expected to be proved by the absent witnesses, and further, that the witnesses are within the jurisdiction of the court. The court should also satisfy itself of the diligence used to obtain the witnesses, and the bona fides of the application for compulsory process, and that it is not made for mere delay."

These cases have been several times cited and followed. While they did not involve the same concrete question involved here, the court was dealing with the same constitutional rights, and with the same discretion which the law vests in trial courts. In the state of this record, we cannot say that there was such an abuse of the discretion of the trial court as to work a reversal, or that the accused was thereby deprived of his constitutional rights. It appears that he was represented by counsel; whether counsel of his own selection, or of the court's does not appear. It also appears that there was not application to the court for any process as to any witness, nor offer of showings for absent witnesses; and none was examined for the defendant except the defendant himself. It is not claimed that he was deprived of any evidence, nor that any evidence was obtainable which would have been of benefit to the accused. The action of the court in arraigning accused so soon after the arrest, or in setting the day of trial so soon after the arraignment, was not even assigned as a ground for a new trial. In fact, no complaint was made, except at arraignment and the time the trial was entered into; and then only as the mere statement or conclusion of counsel, without any fact to show that the accused would be prejudiced by the hasty action of the court.

If there were valid reasons why the accused should not be arraigned so soon or his trial set for such an early date, it does seem that his counsel would have shown the facts to the trial court, which would thus deprive the defendant of his rights. We are not willing, therefore, to say that there was reversible error in putting the defendant to trial over his objection, when the case was called for trial. It is not made to appear that the accused was denied his constitutional rights, nor that the trial court abused its discretion in thus putting the defendant to trial. In the absence of any facts or evidence on the subject, we must indulge the presumption in favor of the action of the trial court. If it was made to appear in this record that the accused was thus deprived of his constitutional rights, or that the trial court had abused its discretion, the case would then, of course, be different. As said in *Walker's Case, supra,* and in several others following it, the discretion of trial courts cannot be allowed to deny accused persons their constitutional rights.

(2) There was no error in the trial court's ordering and organizing another grand jury, after the first had been discharged. The action of the trial court in this respect is clearly authorized by section 7259 of the Code. This section is not—as counsel for the accused argue—expressly repealed by the New Jury Law of 1909 (Acts 1909, § 32, p. 32, p. 317); nor do we think that it was repealed by necessary implication. We find no repugnancy between this section and the New Jury Law. This section applies to juries in special cases therein mentioned, not provided for in the act of 1909, but which special cases are recognized by the provisions of the act of 1909.

(3) There was clearly no merit in the contention of defendant's counsel, that the venire of jurors should be quashed because only the initials of the veniremen appeared upon the lists served upon the accused. While the act requires the commissioners to place one of the full Christian names upon the jury roll, and not to use initials, yet their failure to do so is no ground for quashing the venire. The statute expressly provides that objection to the venire can be made only upon the ground of fraud in drawing or summoning the jury. —Acts 1909, § 29, p. 317; *Patterson v. State,* 171 Ala. 2, 9, 54 South. 696.

The action of the court on the motion for a new trial is not revisable.

(4) There was no error in the court's declining to exclude evidence of the state's witnesses, that the accused said, on the day of the trial, that "he expected to get him a man" if a warrant was issued for him. It was shown that a warrant was issued that day for the accused, that the deceased was instrumental in having it issued, and that this was the motive for the accused's killing her. It was therefore clearly for the jury to say if this was not a threat by the accused against the deceased.—*Harrison v. State,* 79 Ala. 20, 31; *Ford's Case,* 71 Ala. 385.

(5) The physical condition of deceased was admissible in evidence, as a part of the res gestæ, and to aid the jury in fixing the grade or degree of punishment. —4 Ency. Ev. p. 607, and authorities cited.

(6) The defendant having voluntarily taken the stand and testified as a witness for himself, it was competent for the state to impeach him by proof of his general bad character.—*Mitchell v. State,* 148 Ala. 618, 42 South. 1014; *Ross v. State,* 139 Ala. 144, 36 South. 718.

[Hawks v. The State.]

We have carefully searched this record for error, and, finding none, the case must be affirmed.

Affirmed. All the Justices concur.