46 So.2d 837

**WYATT v. STATE.**

**2 Div. 791.**

Court of Appeals of Alabama.
Jan. 10, 1950.

Rehearing Denied Feb. 7, 1950.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

Jas. A. McCollum and Walter G. Woods, of Tuscaloosa, for appellant.

HARWOOD, Judge.

This appellant stands convicted of the offense of rape, the alleged offended girl being appellant's fourteen year old daughter Mary Leona Wyatt.

In the court below appellant filed a plea in abatement to the indictment, and a motion to quash same, each asserting substantially the same ground.

The plea in abatement challenges the validity of the indictment because "one of the persons who prepared the jury roll and cards required by Title 30, Section 20 of the 1940 Code of Alabama was not qualified to act in that respect and was not a qualified elector of Hale County, Alabama at the time he assisted in preparing said jury roll and cards * * *"; that the clerk of the jury commission which prepared the jury roll was at the time Register in Chancery of Hale County, Alabama, for which he received compensation; that the jury box

was refilled before the jury box was exhausted; that all laws passed subsequent to 1910 were passed by illegal legislatures, in that the legislature had not been reapportioned as provided in the Constitution of 1901. §§ 198–203.

The State's demurrer to said plea was properly sustained. The grounds asserted are vague and uncertain, or frivolous, or mere conclusions of the pleader, and fail to assert that the grand jurors who found the indictment were not drawn by the officer, and in the presence of the officers designated by law to draw the same. Sections 278 and 285, Title 15, Code of Alabama 1940, and cases cited thereunder; Orr v. State, 236 Ala. 462, 183 So. 445.

The State's motion to strike the motion to quash was properly granted. Sections 278, 285, supra.

The appellant also filed a motion to quash the venire of petit jurors, and assigned as grounds therefore substantially the same grounds as assigned in support of his plea in abatement to the indictment. The State's demurrer to the motion, and its motion to strike were properly sustained and granted. Section 46, Title 30, Code of Alabama 1940.

■ Upon the State's demurrers to his first motion to quash the venire of petit jurors being sustained the appellant filed a second motion to quash the venire on the ground that it was not drawn by the presiding judge of the Fourth Judicial Circuit, but by the associate judge thereof. The State's motion to strike the motion No. 2 of appellant was properly granted. Section 30, Title 30, Code of Alabama 1940, specifically provides that any one of the judges of a circuit having more than one judge may draw the grand and petit juries from the box.

■ Appellant's demurrer to the indictment was likewise properly overruled, the indictment being in Code form. The substitution of the word "girl" for "woman" as prescribed by form 89, Section 259, Title 15, Code of Alabama 1940, does not render the indictment bad. Almon v. State, 21 Ala. App. 466, 109 So. 371.

Prior to entering upon trial appellant also moved for a continuance upon the grounds that certain newspaper publicity vicariously connected with this case would prevent appellant from receiving a fair and impartial trial at this time.

Evidence was heard upon this motion, upon completion of which the court denied the motion.

■■ The question of granting a continuance addresses itself to the enlightened discretion of the trial judge. We find no basis whatsoever for disturbing his ruling in this instance. Morris v. State, 193 Ala. 1, 68 So. 1003; Wilson v. State, 31 Ala. App. 21, 11 So.2d 563.

The evidence presented by the State tends to show that on 24 July 1949 the appellant, accompanied by his daughter Mary Leona, and his wife and baby had driven from his home into Moundville. On the return trip from Moundville they picked up a young girl named Evelyn Tingle, about eleven years of age, who accompanied the party to appellant's home.

According to Mary Leona the appellant, during the journey, made improper advances toward her, and in vulgar and obscene language expressed an intention of having sexual intercourse with her, and told her that he was "going to treat her as his wife," and that "it never hurt a woman he knew of to treat her like that."

After they had returned and entered the house the prosecutrix testified that the appellant, after threatening her with a stick, pulled her into a bed room and pushed her down onto a bed, and thereupon attempted to have intercourse with her. Although the sexual act was not completed, the prosecutrix testified definitely that appellant succeeded in accomplishing a penetration.

The wife of the appellant, and mother of the prosecutrix, sought to intervene. The appellant secured a shotgun and threatened to kill her. The prosecutrix's testimony was to the effect that she submitted to appellant on condition that he would not shoot her mother.

During this melee the prosecutrix and her mother ran from the house, and went to-

wards the home of Guthrie Wyatt, father of the appellant, who lived about 235 yards away.

The appellant followed and met Guthrie Wyatt a short distance from the latter's home. Guthrie sought to calm appellant, and appellant insisted he was going to make his wife and daughter return and cook his supper. Guthrie Wyatt invited appellant to eat at his house. Appellant and Guthrie Wyatt, who testified as a witness for appellant, recounted that a fight ensued between the two. Who struck the first blow, or what caused the fight is not clear from the record. At any rate, Guthrie Wyatt obtained a piece of wood and struck appellant a rather severe blow on the head.

In order to give a logical sequence to the facts we will interpolate at this point certain evidence developed during the trial by examination of witnesses for the defendant.

It appears that following the fight between appellant and Guthrie Wyatt that Guthrie Wyatt and his wife, accompanied by another son, Aaron Wyatt, and Aaron's wife and children drove into Greensboro where a warrant for appellant, in connection with peace bond proceedings, was secured. This was a Saturday night. The following Monday a hearing was held on the peace bond proceedings before Honorable R. K. Greene, Probate Judge of Hale County. At this hearing Idella Wyatt, wife of appellant, testified as a witness in support of the issuance of the peace bond.

Reverting to the evidence presented by the State in the trial below, it appears that Mrs. Idella Wyatt was subpoenaed as a witness for the State.

She was called into the court room following a statement by the Solicitor that she had been advised of her privilege of not testifying against appellant, her husband, and that she had stated she claimed such privilege. The Solicitor then requested that the court explain the matter of the privilege to Mrs. Wyatt, so that the State might know if she would be available as a witness then, or at a later stage of the trial.

The court thereupon explained the law applicable to the situation to Mrs. Wyatt and she stated she did not intend to testify against her husband.

The defendant thereupon objected "to those questions in the presence of the jury," and moved for a mistrial. The motion was overruled. During the colloquy ensuing the Solicitor made the following statement to the court:

"Mr. Gewin: I would like to make this statement:

"Mrs. Wyatt was served with a subpoena from this Court. Upon entering the Court Room we announced in the presence of the defendant and his counsel she had a subpoena and she had refused; and we wished to bring her in or let the Court bring her in and explain it. The defendant and counsel were present. They made no objection. We would have been delighted to have the jury go out; but it was known to them at that time and they said nothing.

"I would like for the record to show that."

The State then offered as a witness Judge R. K. Greene, who testified that on July 24, 1948 the above mentioned peace bond proceedings were heard before him as presiding judge; that the appellant was present and cross examined each and every witness presented against him; that among such witnesses was Mrs. Idella Wyatt, and the proceedings had been held as soon as convenient at Mrs. Wyatt's request; that he advised Mrs. Wyatt of her privilege of not testifying against her husband, and she stated she wished to testify; that the testimony was not taken down or transcribed, but that he remembered the substance of Mrs. Wyatt's testimony.

Over appellant's objection Judge Greene stated that Mrs. Wyatt had testified that on the afternoon in question she, the appellant, and the prosecutrix had gone to Moundville; that on the way back the appellant had jerked up prosecutrix's dress and obscenely expressed his intention to have sexual intercourse with her that night, and had told Mrs. Wyatt "and if you say anything about it I am going to kill you and kill her too." Upon her telling appellant not to talk that way he replied "I am going

to do it. I have done it before, and I am going to do it tonight. I will kill both of you if you tell it."

Concerning Mrs. Wyatt's testimony as to the occurrences after they reached their house, Judge Greene testified as follows: "She said he ran the small children, told them to get out of the house, and he took the girl in the other room and told her not to come in, but she did go in, and opened the door, and he was on top of the girl at that time on the bed; and that he jumped up and grabbed a shotgun that was on the wall and said, 'I told you not to come in here; and she ran out with her baby in her arms, and ran through the yard at her father-in-law's, Guthrie Wyatt's, and by the yard and ran to the woods."

Mr. B. W. Coleman, Sheriff of Hale County, and who was present at the peace bond hearing, over appellant's objections gave testimony largely corroborative of Judge Greene's concerning the testimony of Mrs. Wyatt at said hearing.

A large number of witnesses, including the appellant, testified in his behalf. The evidence introduced by the defense sought to establish first the innocence of the appellant by a complete denial that he was at any time guilty of any conduct toward his daughter tending to establish the charge against him, and secondly, to weaken the probative force of the State's case by evidence tending to show that the prosecutrix's charges resulted from ill will on her part generated from appellant's efforts to exercise parental restraint on her wayward conduct, and further evidence tending to show that since the preferring of these charges the prosecutrix had made statements to several parties that the charges were unfounded; and further that prosecutrix's general reputation, and her reputation for chasity, and for truth and veracity, were all bad, and that appellant's general reputation, and his reputation in regard to sexual offenses was good.

The appellant testified that for some time prior to the date of this offense his daughter had been making trips with a brother of appellant and the brother's wife, from which excursions the prosecutrix would return showing evidence of drink. He had prohibited any more such trips, and prosecutrix became surly toward him. He had also whipped the prosecutrix several times because of other acts of misconduct on her part, and thus further increased her ill will toward him.

Appellant denied that he had in any manner conducted himself improperly toward his daughter by word or deed, on the trip to or from Moundville on the day in question.

He further testified that for about a week prior to the alleged offense he had been working in the woods in some logging operations. He came home for dinner each day, but no meal was ever prepared for him because his wife and daughter, the prosecutrix, would be drunk.

On the day in question he had demanded, upon their return home, that they prepare supper for him, and went into the yard to work on his truck. The wife and daughter made no real efforts toward cooking, but only "fooled around." He began to "cuss," and came and sat on the porch. The fussing continued, and he finally entered the house, and told them he was going to beat hell out of them. During this time he kicked or knocked a chair over. Idella and Mary Leona then ran out of the house, and went toward his father's house. He followed them. He met his father and got into an argument with him because he, appellant, insisted he was going to make the pair return and cook his supper. He told his father he had put up with his wife and daughter's neglect long enough and was going to put a stop to it. His father told him he was not, and he called his father a liar, upon which his father struck him and the fight ensued.

During the fight his father hit him on the head several times with a wood plank, and he became unconscious.

When he partially regained consciousness he went to a neighbor's house, and an effort was made to stop the bleeding from his head wound. When the sheriff came to

arrest him he was so weak he could hardly walk.

Appellant claimed that for the next several days he was "blacked out" for most of the time, and that he did not remember being at the peace bond proceedings or what transpired there, and that he did not know upon what charges he was held until several days later he asked someone.

L. C. Wyatt, and Charles Wyatt, young sons of the appellant, and Evelyn Tingle, the young girl who was picked up on the return trip from Moundville, testified for the defense. The tenor of their testimony was that they were in the house, or in the yard nearby, during the time the prosecutrix claims she was raped. Appellant was fussing about having his supper prepared, but they denied that he mistreated the prosecutrix at any time.

Rebuttal testimony was presented by the State tending to show that appellant was fully conscious during the time he was in jail after his arrest, and that he made no inquiries as to the charges against him.

The transcript of the evidence in this record is voluminous, covering some 273 pages, the entire record being some 375 pages. We have set out sufficient evidence as in our opinion gives a fair picture of the case, and sufficient upon which to base a fair review of this case. We are clear to the conclusion that under all the evidence the jury was justified in concluding that the offense charged had, as a matter of fact, been committed. We might note that a reading of this record impresses us that the searching cross examination of several of the witnesses presented by the defense tended to cast suspicion upon the credibility of their direct testimony, and probably so impressed the jury.

Appellant's counsel has set forth some 123 propositions as bases of error in this case. While we have examined such propositions with care we will not attempt to write too many of them, for in our opinion they are patently without merit.

Appellant's earnest counsel argues that the lower court erred in admitting over appellant's objection the testimony of Judge R. K. Greene relative to the testimony of Mrs. Idella Wyatt at the peace bond proceedings held before him, and further that the court erred in overruling appellant's motion for a mistrial made after Mrs. Wyatt had made known to the court, in the presence of the jury, that she refused to testify against her husband.

Mrs. Wyatt had appeared as a witness adverse to this appellant in the peace bond proceeding. According to Judge Greene she was, in that proceeding, fully advised that as wife of the appellant she was privileged not to testify against him. She elected to testify, and did so under oath. The appellant was present, and cross examined each and every witness that appeared against him in that proceeding.

In the trial below Mrs. Wyatt was subpoenaed as a witness by the State. She was instructed as to her privilege of not testifying by the Solicitor, and she hold him she "refused." She was thereafter, without objection, called before the court by the State. The court explained her right to refuse to testify, and that she could not be compelled to take the witness stand. She "claimed her privilege" and refused to testify against her husband.

In our opinion no error resulted from the fact that the above outlined occurrence took place in the presence of the jury.

There is a duty on every person to testify in judicial proceedings, as the public has an interest in the proper and just conclusion of cases brought into the courts of a sovereign power. In the interest of certain policies certain classes of witnesses may be exempted from this duty, even though such exemptions may tend to interfere with full disclosure of facts. Among such classes of witnesses who may be exempted from testifying are attorneys who stand in relation of attorney and client to one of the parties litigant, priest in relation to confessor, etc., and since the enactment of Section 311, Title 15, Code of Alabama 1940, providing that husband and wife may testify either for or against each other in criminal cases, but shall not be compelled to do so, there

may be added to this exempted class of witnesses, husband and wife.

This testimonial exemption is however a privilege, purely personal to the witness, and is solely a matter between the witness and the court.

Thus even though Mrs. Wyatt had told the Solicitor she did not wish to testify against her husband, this was but an expression of her then existing intent, in no way binding on her and subject to being changed the next moment.

It is to the court that the claim of privilege must be made known.

Mrs. Wyatt was called before the court for this purpose. No objection was interposed by the appellant to the procedure followed, nor was any request made that the jury be excused.

*After* Mrs. Wyatt had claimed her privilege the appellant then objected to the questions, and moved for a mistrial. If any merit ever attached to appellant's objection to the procedure followed, which we doubt, clearly his complaint of the court's action was too tardily expressed to be of avail to him.

█ As to the permitting Judge Greene to recount, over appellant's objection, the testimony of Mrs. Wyatt given before him, it is our conclusion that such testimony by Judge Greene was properly admitted.

█ The testimony of a witness at a former trial is admissible in a second trial when at the time the witness is dead, under disability, is permanently absent from the State, or becomes unavailable by reason of claim of privilege at the second trial. Mims v. Sturdevant, 36 Ala. 636; Jeffries v. Castleman, 75 Ala. 262; McCoy v. State, 221 Ala. 466, 129 So. 21. Even so, the evidence given at the former trial is admissible only if in the subsequent trial the issues and parties are substantially the same, and the issue in the subsequent trial is substantially included in the first trial, though there may be a nominal change of parties. Hill v. McWhorter, 237 Ala. 419, 187 So. 494.

█ In addition to the above requirements the testimony of a witness in the former trial or action must have been given under oath, Davis v. State, 17 Ala. 354, before a tribunal or officer having legal authority to take testimony and affording in practice an opportunity for cross examination, and so presented that the party against whom the witness was offered had an opportunity to test its credit by cross examination. Wigmore on Evidence, Vol. V, Third Edition, Sections 1370-1394. See also McElroy, The Law of Evidence in Alabama, pp. 91, 92.

Opportunity to exercise the right of cross examination, and not the actual exercise of the right, is sufficient. One's failure to exercise the right does not furnish grounds to exclude the former testimony. Long v. Davis, 18 Ala. 801; Percy v. State, 125 Ala. 52, 27 So. 844; Wigmore, supra.

Our statutes, Secs. 401–421, Title 15, Code of Alabama 1940, pertaining to peace proceedings are in restraint of liberty and penal in nature. Noles v. State, 24 Ala. 672. The bond in such cases, when allowed, is payable to the State, and not to any individual. The State is a party to such proceedings, which are criminal proceedings preventive in nature. See Annotation 90 Am.St. Reports at page 799 and seq.

In discussing the sameness of parties or privies in relation to the admission of testimony taken at a former trial Mr. Wigmore, in Vol. V of Wigmore on Evidence, Third Edition, Section 1388, makes the following observation:

"It is commonly said that the parties to the litigation in which the testimony was first given must have been the same as in the litigation in which it is now offered.

"But this limitation suffers in practice many modifications; and properly so, for it is not a strict and necessary deduction from the principle. At first sight, indeed, it seems fair enough to argue even that a person against whom former testimony is now offered should have to be satisfied with such cross-examination as any other person whatever, in another suit, may have chosen to employ. And it is entirely settled that in some such cases he must be satisfied, namely, in cases where the other person was a

privy in interest with the present party. The reason for such cases is that there the interest to sift the testimony thoroughly was the same for the other person as for the present person. The principle, then, is that where the interest of the person was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end. Thus, the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue.

"It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent has; and the determination of this ought to be left entirely to the trial judge."

In State v. Longstreth, 19 N.D. 268, 121 N.W. 1114, Ann.Cas. 1912D, 1317, the Supreme Court of North Dakota held that the former testimony of the defendant in a bastardy proceeding was admissible in a later prosecution against the defendant for procuring an abortion. In State v. Von Klein, 71 Or. 159, 142 P. 549, Ann.Cas. 1916C, 1054, former testimony given by a witness in a larceny prosecution, the witness being unavailable at the time of the second prosecution for polygamy, was held admissible in the polygamy prosecution.

Our own Supreme Court in Nordan v. State, 143 Ala. 13, 39 So. 406, 411, considered in question of the admissibility of evidence given by a deceased witness in a prosecution for seduction in a later prosecution for murder, and in holding such evidence admissible wrote as follows: "The witness P. A. McDaniel, was permitted to testify, against the defendant's objection, that in the case of the State v. Nordan—this defendant—charged with seduction of the deceased, the deceased was present and testified as a witness in that case on behalf of the State, and in her testimony then swore that certain letters, which she produced on that trial and being the same offered in evidence by the state in the present case, were

in the handwriting of the defendant. We think this evidence was admissible. We recognize the rule that, in admitting evidence of the testimony of a witness on a former trial who has since died, it must be shown that the testimony of the deceased witness was given in a case where the parties and issues were the same as in the case in which it is proposed to prove the testimony of such deceased witness. And it is true that the main issue in the seduction case, in which the deceased witness testified, is entirely different from the main question in the present case. But as to the particular evidence here offered the issue in the two cases is identical; that is, the genuineness of the letters. The parties were the same in both cases, and the particular issue upon which the evidence was offered was the same, and we think this satisfies the rule, and distinguishes this case from that of Davis v. State, 17 Ala. 354, and is not in conflict with the general doctrine there stated. See Wigmore on Evidence, vol. 2, § 1387."

In the present case the issues raised by the testimony of Mrs. Wyatt at the peace bond proceedings, as recounted by Judge Greene, were substantially the same as those raised in the present trial. The defendant in the peace bond proceedings examined Mrs. Wyatt. His interest and motive in discounting Mrs. Wyatt's charges made in the peace bond proceedings must be considered to have existed and to have been the same as in the present proscution. It is our conclusion therefore that the court properly ruled in admitting Judge Greene's testimony.

What we have said above is equally applicable basically to the action of the court in admitting, over defendant's objection, the testimony of Mr. B. W. Coleman, then Sheriff of Hale County, and who was present at the peace bond hearing, relative to Mrs. Wyatt's testimony in such proceedings.

It appears that during the cross examination of Mr. Coleman the following occurred:

"Q. (By Mr. Williams:) What was Leron charged with when arrested Saturday night?

"A. When I arrested Leron, he was charged with assault and battery. Judge Greene was not in town to get a warrant. They told me when I went up there, he might kill me. I wouldn't go out without one. I went to Mr. Charlie Waldrop to fill out a warrant before I went.

"The Court: Do you want that information in.

"Mr. Williams: No, sir.

"Mr. McCollum: We move for a mistrial. That is highly prejudicial.

"The Court: What is?

"Mr. McCollum: His answer about what he was afraid the defendant would do."

The court thereupon excluded the answer, and instructed the jury it was not to be considered as evidence. No reversible error should be cast upon the lower court in this instance.

In our opinion the lower court did not err in overruling appellant's objection to questions propounded to defense witness Guthrie Wyatt seeking to elicit evidence as to whether, when he came to Greensboro on the night following his fight with the appellant, he had not asked the sheriff if he could get other warrants against the appellant. This in view of the fact that on direct examination this witness had testified that on that night the warrant of arrest had been issued for the arrest of the appellant on a charge of assault and battery, and that nothing had been said about bringing any charge against appellant for rape, or for incest.

Likewise since this witness had testified on direct examination that no complaint had been made against appellant on that occasion except for assault and battery, it was competent for the State to show, through cross examination of this witness, that he had told the sheriff, on this occasion and in the same conversation that appellant "had a gun and would kill him," and the sheriff better watch out.

Mrs. Lena Wyatt, as a witness for the defense, had testified on direct examination to the effect that prior to the date of this alleged offense Mary Leona had complained to her as to the restraints placed on her by her father, the appellant, and was mad with him because of these prohibitions; that about two months prior to this alleged offense she had observed Mary Leona and her mother, Idella Wyatt, doing "a big days sewing," and they had told her that "Leron had the money" and they planned to slip away while he was at work, and go to Montgomery.

This witness further testified that on the day in question she saw Mary Leona after she had left appellant's home after the "fuss" down there. Mary Leona came by witness' home and told her "Daddy is coming and I am getting away." At this time Mary Leona bore no scratches or marks, and her clothing was in no way disarranged. About eleven o'clock that night Mary Leona and her mother came to witness' home where they remained at least through the following Monday. Mrs. Wyatt stated that on Monday she examined Mary Leona's clothes, which were the same that she had been wearing on the day of the alleged attack, and found nothing indicating that she had been mistreated.

Mrs. Lena Wyatt also testified that on several occasions since this appellant had been charged with rape that Mary Leona had told her in substance that the charges were untrue, and were framed up in order to keep her father in jail, because she resented his discipline and was afraid of him.

In view of the tenor of this testimony and the impression sought to be created thereby to the effect that the only possibility of mistreatment of Mary Leona by the appellant arose from his attempted exercise of parental discipline, with the ill will generated on Mary Leona's part as a result thereof, and the absence of any other claim of mistreatment on Mary Leona's part, we think the court properly overruled appellant's objection to questions propounded to Mrs. Wyatt on cross examination inquiring if she had not told the grand jury, when a witness before that body on July 13, 1948, that she knew that Leron

had been fooling with Mary Leona and having sexual relations with her.

 Mrs. Wyatt denied making such statement to the grand jury. The court was therefore correct in also permitting the State to show in rebuttal, by two members of the grand jury that she had made such statement as a witness before that body. It is permissible to allow a grand juror to testify to statements made before the grand jury by a witness when such statements are contradictory to the testimony of the witness given during the pending trial. Williams v. State, 32 Ala. App. 597, 28 So.2d 731.

The court gave a full and adequate oral charge to the jury, and in addition gave 65 written charges requested by the appellant.

The court refused some 35 written charges requested by the appellant. We have examined all such refused charges. In our opinion no error resulted from the court's action in refusing any of these charges because they were either covered by the oral charge of the court, or other written charges given at the request of the appellant, or were infected respectively with one or more of the following vices: argumentativeness; abstractness under the indictment, or under the issues made by the evidence; unintelligibleness; incorrect statements of legal principles; failure to hypothesize on the evidence.

In the interest of brevity we will refrain from a discussion of numerous other points argued in appellant's brief. We have examined them, and have concluded that none are meritorious, and that to write to these points would entail merely a repetition of propositions already copiously written to in previous decisions of the appellant courts of this State.

In our opinion this record is free of error probably injuriously affecting the substantial rights of this appellant, and is due to be affirmed. It is so ordered.

Affirmed.

BRICKEN, P. J., concurs in conclusion.

On Rehearing.

HARWOOD, Judge.

In his brief in support of appellant's application for a rehearing in this cause counsel for appellant urges that the lower court erred in permitting defense witnesses, Guthrie Wyatt, and Mrs. Lena Wyatt, to be cross examined, over appellant's objection as to certain statements they had made to the Solicitor when seeking a warrant for appellant's arrest.

Prior to the admission of this testimony Mrs. Wyatt had testified that on the Saturday evening in question the first she knew of the trouble she heard some screaming at appellant's house. She went out to see what the trouble was, and observed Mrs. Idella Wyatt and the prosecutrix coming toward her house. The two "least children," of appellant, according to Mrs. Wyatt, were at her house already.

It was then developed by cross examination of Mrs. Lena Wyatt that she had signed a written statement concerning appellant's conduct, said statement being made in the presence of Judge Greene and the Solicitor, reduced to writing, and sworn to and signed by this witness. The witness was handed the statement, and read it.

She was then asked, over appellant's objection if she had not, at this time stated: "Just about dark last Saturday night, July 24, 1948, Leron's small children came to our house hollering and crying and telling us their father, Leron Wyatt, was going to kill their mother and their sister, Mary Leona."

 This evidence was admissible as a prior statement of Mrs. Wyatt which was inconsistent and variant from the testimony she had just immediately given. Such testimony was of course ineffective as proof of any facts to which it related, but was admissible solely to impeach the witness, in that it tends to show that Mrs. Wyatt either had forgotten what she once knew, or willfully misstated facts either in the prior

statement or in the trial below. See R.C.L., Vol. 28, Sec. 219; Am.Jur., Vol. 20, Sec. 458.

Guthrie Wyatt had testified that three of appellant's young sons were at his house late in the afternoon in question when they heard appellant's truck return home. The three boys then went to meet appellant, and in a few minutes returned solely to get some greens which they had left at Guthrie Wyatt's house. Right after they left this time he heard some one "holler out" at appellant's home and he started there to see what the trouble was.

Over appellant's objection, but after establishing a full predicate for such testimony, the State was permitted to show through Guthrie Wyatt that he had made a statement to Judge Greene and the Solicitor, upon the occasion when he and his wife sought a warrant against appellant, to the effect that "Just about dark last Saturday night July 24, 1948, Leron's small children came to our house hollering and crying and telling us their father, Leron Wyatt, was going to kill their mother and their sister, Leona Wyatt."

The same principles discussed above as to the admission of the inconsistent prior statement of Mrs. Lena Wyatt are equally applicable to the rulings in this instance. In addition it is noted that after Guthrie Wyatt and appellant's counsel had read the signed statement, counsel announced he had no objection to the introduction of the whole statement.

Counsel further urges that the judgment entered in this cause is defective in that it fails to show the defendant was present in court at the time sentence was pronounced, and fails to show that the defendant was asked if he had anything to say why the sentence of law should not be pronounced upon him. It is elemental of course that such omissions would render this judgment defective. However, it further appears from this record that in response to a writ of certiorari issued at the behest of the State, there was forwarded to this court a full and complete copy of the judgment entered by the court, certified to be correct by the clerk of the court below. This judgment is in all respects regular.

Application denied.