169 So. 332

## BOGLE v. STATE.

8 Div. 260.

Court of Appeals of Alabama.

June 9, 1936.

Rehearing Denied June 30, 1936.

Henry D. Jones, of Florence, for appellant.

A. A. Carmichael, Atty. Gen., for the State.

BRICKEN, Presiding Judge.

Appellant (defendant below) was convicted under count 1 of the indictment wherein he was charged with the offense of distilling, making, or manufacturing alcoholic, spirituous, malted, or mixed liquors or beverages, a part of which was alcohol, contrary to law, etc.

The evidence adduced upon the trial of this case in the court below tended, without dispute, to establish the corpus delicti. But on the question of the identity of this appellant as being one of the perpetrators of the crime, the testimony was in sharp conflict. The state examined two witnesses, Jake Ayres, the first witness, testified that this appellant, Millard Bogle, was one of the men at the still at the time of the raid, and that he saw him take the connection down off the still that runs from the cap to the thumper barrel, and that he afterwards saw him measuring the whisky, etc. But on his cross-examination he testified: "I don't know how long I have known Millard Bogle, have been seeing him around. I know his brother Cecil Bogle. They are about the same size and look about the same, have a very striking family resemblance and look very much alike, that could have been Cecil."

J. K. Ayres testified, among other things: "I was sheriff of this county the fall of 1934. * * * I saw Millard Bogle at the still when we made the raid. * * * I know positively I saw him. He ran and I ran after him. * * * I finally gave up from trying to catch him. * * * I finally caught him at a sorghum mill in the following October. * * * I know the defendant's brother Cecil. He favors Millard. They are about the same size."

By the undisputed evidence the date of the "raid" upon the still was August 25, 1934, and, as stated by the state witness, "the raid was made in the latter part of the evening after dinner sometime."

The defendant contended in the court below that at the time the officers raided the still on the afternoon of August 5, 1934, he was at another and different place some several miles distant and was engaged in cutting stove wood for his brother. He not only testified to this himself, but also offered several other witnesses who emphatically testified to the same effect. In this connection Frank Terry, witness for defendant, testified:

"I live in Lawrence county, I am fifty-two years old. I have lived here all of my life. I live at Hillsboro. I know Millard Bogle. I have know him practically all of his life. He lived with his brother south of Hillsboro which was about two miles or maybe a little better south of Hillsboro. * * * I remember hearing about Mr. Ayres and his deputies raiding a still and arresting a negro Goodloe and a white man by the name of Roberts. This was on Saturday August 25. I saw Millard Bogle that day. He was three hundred yards east of Atley Bogle's house cutting stove wood. Atley Bogle lives south of Hillsboro about two miles. The still was north of Hillsboro. I saw Millard Bogle about 1 o'clock, about three hundred yards from Atley Bogle's house. I talked to him for about an hour. I left him there cutting wood about 2 o'clock. One of Mr. Regan's boys was helping to cut wood. I know that this was the same day that the officers raided the still at which they arrested Goodloe and Roberts. My boy was there where the defendant was cutting wood. Just before I left Millard a man by the name of Wilbur Lang came up where Millard was cutting wood."

Morris Terry, witness for defendant, testified:

"I live in Lawrence county and I know Millard Bogle. I heard about the raid. It was on Saturday. I saw Millard Bogle that day over about three hundred yards in the woods back of Atley Bogle's house southeast of Hillsboro. I saw Millard from about 1 to 2 o'clock cutting stove wood. He was about three miles from Hillsboro. Albert Regan was with him. Dude Land came along about the time we were leaving. I left about 2 o'clock. I left him cutting wood. Mr. Frank Terry and I were out there."

Albert Regan was the next witness for defendant and he testified:

"I live five miles south of Hillsboro. I know Millard Bogle but am not related to him. I remember the occasion when the still in controversy was raided. Millard stayed with his brother part of the time and with his mother part of the time. I remember seeing the defendant on the 25 of August, 1934. I cut wood with him on the Madry place near Atley Bogle's house, his brother. We were cutting wood about three hundred yards from the house. I live about a mile and a half from Atley Bogle's house. I first saw the defendant over there where the wood was cut that morning. We cut up until dinner time.

We ate at Atley Bogle's where we stayed about an hour. We went back to work and worked until about 4 to 4:30 o'clock. Millard Bogle was not out of my sight from about 7 that morning until about 4 or 4:30 that afternoon. When we quit work we went to Atley Bogle's. I left there about 7:30 o'clock. I ate supper there but did not stay there all night. Millard stayed there all night. He also ate supper there. * * * While we were cutting wood Frank Terry, Morris Terry and Perry Feagens came down there. Frank Terry came about 1:30 with Morris Terry and stayed until about 2 o'clock. The Feagen boy came between 2 and 3 o'clock. The Terrys had gone then. The Feagen boy stayed only a few minutes. He said he was going home. He lived about a quarter of a mile from where we were. It was about three miles from where we were to Hillsboro."

Cecil Bogle was introduced as a witness and the record shows the following occurred:

"Defendant's counsel at this point asked the witness, Cecil Bogle brother of the defendant to stand beside the defendant in the presence of the jury. I know Mr. Kumpe Ayres. About four or five days after the raid on August 25, 1934, Mr. Kumpe Ayres came down to where I was working, raking hay. Mr. Ayres came up there and asked me if I was Millard or Cecil. I told him I was Cecil. He asked me if I was certain I was Cecil and not Millard. The sheriff asked me about Millard. I did not see Millard at the time I was talking to the sheriff. I did not know where he was. I had not seen him since dinner. This was some time in the afternoon. I think that Millard and I were dressed alike with overalls and shirt. I live five miles from Hillsboro with my mother. Atley Bogle lives about two and a half miles from Hillsboro."

Atley Bogle testified:

"I am a brother to Cecil and Millard Bogle. On the 25 of last August I was working for the TVA. I came home around dark. I live three miles from Hillsboro. When I got home my wife and baby, Millard Bogle and Albert Regan were at my house. Millard and Albert ate supper there, after I got home. I saw the wood that Millard had been cutting. The wood was from two to three hundred yards from my house."

J. W. Roberts, one of the persons arrested at the still, testified:

"I live in Lawrence county. I remember the 25th day of August, 1934, on Saturday, when Mr. Ayres made a raid on a still north of Hillsboro on Millard's creek. I was there that day. It was not my still, and I had northing to do with it, nor with its operation. It was not my liquor. Millard Bogle was not there all that day. The defendant did not run off when the officers come up. I was there when the officers came up, and Millard Bogle was not there at all. I know him, and I am not related to him.

Robert Turner also testified on this subject as follows:

"I remember the day the sheriff made the raid at the still 4 miles north of Hillsboro in the Blue Spring bottoms. Mr. Roberts was there. I passed very close to him. I was in a wagon. I saw two men there. I passed something like 50 or 75 yards from the still. It was something like 1 or 2 o'clock. I know Millard Bogle. He was not one of the men who was there. I am no kin to him."

In addition to the foregoing, the defendant introduced numerous witnesses who testified that his general character was good in the neighborhood where he lived and was known. The evidence as to the good character of the accused was not in conflict. No witness testified to the contrary.

The controlling question in this case is, Was this appellant, defendant below, the man at the still and doing the acts testified to by the state's witnesses, or, was he not, as testified by the defendant himself and the large array of witnesses who testified in his behalf? Under the conflicting evidence above quoted, this question was for the jury to determine. In its consideration of this question the jury were instructed by the trial judge to consider all the evidence before them including the evidence as to the good character of the accused, which, as stated, was uncontroverted. In this connection the defendant requested, in writing charge A, which was refused by the court. Said charge reads as follows: "A. The court charges the jury that the good character of the defendant when taken along with all the other evidence in the case may generate a reasonable doubt in the minds of the jury, when without such evidence

of good character the jury would entertain no such doubt."

 The principle of law embodied in the foregoing charge is well settled. In all criminal prosecutions, whether for felony or misdemeanor, the accused may offer evidence of his previous good character, not only where doubt exists on other proof, but even to generate reasonable doubt of his guilt. Craven v. State, 22 Ala.App. 39, 111 So. 767; Cleckler v. State, 21 Ala. App. 191, 106 So. 622; White v. State, 18 Ala.App. 96, 90 So. 63; Jones v. State, 21 Ala.App. 234, 109 So. 189; Bowen v. State, 217 Ala. 574, 117 So. 204; Savage v. State, 23 Ala.App. 372, 125 So. 790; Drummond v. State, 20 Ala.App. 286, 102 So. 723, certiorari denied Ex parte Drummond, 212 Ala. 410, 102 So. 726; Camillieri v. State, 19 Ala.App. 521, 99 So. 66; Ex parte Camillieri, 210 Ala. 629, 99 So. 68; 68 A.L.R. 1070 et seq.

The proposition of law here referred to was not fairly and substantially covered by any utterance of the court in the oral charge, nor by charges given at request of defendant.

Other points of decision are presented consisting mainly upon exceptions reserved to the court's rulings on the admission of evidence. These questions may not arise an another trial.

For the error designated, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.