18 So.2d 698

## POLK v. STATE.

### 8 Div. 361.

Court of Appeals of Alabama.
June 27, 1944.

Carmichael & Carmichael, of Tuscumbia, for appellant.

474

Wm. N. McQueen, Acting Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

RICE, Judge.

Willie Sharper, alias Little Bit, was shot and killed by Albert Polk, alias Race Horse.

Race Horse was indicted for murder in the second degree, duly tried, and convicted of the offense of manslaughter in the first degree. His punishment was fixed at imprisonment in the penitentiary for the term of three years.

As the Attorney General puts it:

"Testimony elicited by the State tended to show that the deceased, Little Bit, was shot three times by the appellant, Race Horse, while Little Bit was standing in front of a restaurant or cafe known as the Juke.

"The appellant attempted to establish self-defense by showing that Little Bit was attacking him with a pocket knife, and that he, the appellant, had retreated as far as possible, namely, to some automobiles that were parked in front of the Juke."

In other words the killing was admitted; but appellant sought to excuse himself on the plea of self-defense, as that term was correctly defined to the jury trying the case. The issue raised was properly submitted to said jury.

We have endeavored to perform our full duty under the Statute that controls us (Code 1940, Tit. 15, § 389), but do not deem it worthwhile to discuss any matters other than those mentioned by appellant's distinguished counsel in their brief filed here.

Said counsel have charted our duty—unintentionally, perhaps—in the following language which we quote from their brief, to-wit:

"The killing occurred at a place called the Juke, in Tuscumbia, Alabama. The evidence as shown by the transcript, fails to show that there had been, prior to the shooting, any misunderstanding between appellant, Albert Polk, and deceased, Willie Sharper. The killing occurred on or near the sidewalk, which runs parallel to the front of the cafe or pool room (the Juke, we remark).

"The defendant (appellant) undertook to show by witnesses that prior to the killing deceased had made a number of assaults on different people near the place where the killing occurred, in point of time and space, and most of the assignments of error are based on the refusal of the court to admit this testimony, because it was not a part of the res gestae. Most of the assignments of error grow out of this action of the court.

"There are only two assignments that differ from these—one grows out of the admission by the court of testimony relating to opinion evidence on the question of distance; the other on the refusal of the court to exclude from the evidence part of the argument made by the Solicitor."

Of course it is unnecessary to make assignments of error (Code 1940, Tit. 15, § 389), though it is a convenience to this court which we appreciate.

As counsel for appellant state, most of their assignments of error grow out of the action of the court in refusing to allow defendant (appellant) to introduce testimony showing a "number of assaults on different

people by deceased near the place where the killing occurred, in point of time and space." And the counsel cite for our consideration a number of cases from our Supreme Court (one from Mississippi) dealing with the general subject of res gestae.

Of course there have been a great number of decisions by our Supreme Court—not a few by our own Court—dealing with res gestae. Most of them will be found cited in Corpus Juris Secundum Volume 22, Criminal Law, § 662, pages 1044 et seq.

We do not propose to again discuss the general principles appertaining.

It will be enough to say, here, that while the matters excluded by the court, to rulings doing which exceptions were reserved, were "near the place where the killing occurred, in point of time and space," still they were entirely disconnected from the appellant, and bore no relation whatsoever, that appears, to the difficulty between him and deceased. We can see no reason—and eminent counsel have pointed us to none—save the single one that they were "near the place where the killing occurred in point of time and space," why these several matters should have been allowed to be detailed into the evidence. This was not enough; and the court did not err in the several rulings in question. 22 C.J.S., Criminal Law, § 662, p. 1044 et seq., and citations, supra.

It was appellant's theory that he had "retreated," as deceased advanced upon him with a knife, as far as he could —up to where some cars were parked so close together that he could not go between them. His testimony supported this theory.

In rebuttal, the State offered a witness, Ray Watkins, who testified that the cars, above, were parked "3 or 4 feet apart"— just "an ordinary distance"—and who was then allowed to testify, over appellant's objection, that "there was room enough between the cars for people to walk through."

We see no error in allowing this testimony. It would seem a matter of common knowledge that "people could walk through" cars parked "3 or 4 feet apart;" and to permit this witness to give his opinion to such effect could not, in our opinion have been harmful.

The argument of the Solicitor to the jury: "The defendant gave the deceased the same deal that they gave the boys at Pearl Harbor" did not, we think, transgress the rules that obtain. Cross v. State, 68 Ala. 476. If our conclusion as to this should be wrong we are clearly of the opinion that appellant could not have been injured—the three years imprisonment in the penitentiary, in the face of the State's testimony as to an entirely unprovoked killing, being to our minds positive proof of this latter conclusion.

It is our studied opinion that the judgment appealed from should be affirmed.

And it is so ordered.

Affirmed.