28 So.2d 731

### WILLIAMS v. STATE.
### 6 Div. 372.

Court of Appeals of Alabama.
Jan. 14, 1947.

Jas. A. McCollum, of Tuscaloosa, for appellant.

Wm. N. McQueen, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The appellant was indicted for and found guilty of murder in the second degree.

The evidence introduced by the State in its effort to establish the appellant's guilt was circumstantial.

The body of a negro man named John Plummer was discovered on August 14, 1944 in some woods in Fayette county. The back of his head had been crushed in and the body was lying face down, with the face imbedded in the dirt. A large stone with blood stains and a broken rifle were found in the vicinity of the body. Dr. Stewart, who examined the body of the deceased at about 11 a. m., was of the opinion that he had been dead from 12 to 24 hours at the time of his examination.

The deceased was seen in Fayette, Alabama, on Sunday morning, August 13, 1944, the morning preceding that on which his body was found. He caught a ride in an automobile to a point a short distance south of Fayette where he left that automobile.

Thereafter the deceased went by Jim Rosselle's house where he borrowed a target rifle and some shells. It was this rifle that was found broken near his body.

Three State witnesses testified that they were south of Winfield on Sunday August 13, 1944, at about 12:30 p. m. having driven out to service an automobile that was out of gasoline. An A model Ford roadster automobile passed while they were putting gasoline in the distressed car. Thereafter they proceeded in the same direction as the Ford and followed it for some two miles until it turned off into a logging road. These three witnesses continued on to Oscar Mills' house about a half mile further, and then returned over the same route in about 15 or 20 minutes. They observed the Ford parked about 100 yards off their road on the logging road it had turned into when they were following it on their trip out. The place where the Ford was parked was near the place where deceased's body was later found.

One of these witnesses identified this parked Ford automobile as being that owned by appellant.

These three witnesses observed Jordan Hankins (who also testified for the State) on the road about a quarter of a mile from the logging road as they were making the return trip.

Fred Webster testified that he was sitting on his porch on the Sunday in question and saw the appellant and another person pass in an automobile. While within sight they stopped and picked up a negro man of whose identity this witness could not be sure.

Jordan Hankins was the most important witness presented by the State, as he was the only witness positively placing both the appellant and the deceased in appellant's automobile. Hankins testified on the Sunday in question he was walking down the gravel road off of which ran the before-mentioned logging road when a Model A Ford roadster automobile passed him at about 12:30 p. m. going in the direction of the logging road. There were three persons in this automobile and Hankins recognized the appellant and deceased as being two of them. The third passenger he did not recognize. The point at which Hankins saw this automobile was about a mile from where deceased's body was found.

Gus Sullivan, another witness for the State, testified that he saw the appellant and another person he did not recognize driving toward Winfield about 1 or 2 o'clock on the Sunday afternoon in question.

Sherman Brashier, a deputy sheriff, testified that at the time of his arrest appellant stated that he had been to the place where Plummer's body was found on the Sunday morning of its discovery, but that appellant denied killing deceased.

The above substantially constituted the State's case in chief and upon presentation of the above evidence the State rested. The appellant thereupon moved for a directed verdict, and to exclude the evidence on the grounds that there had been failure of proof of the corpus delicti. The trial court denied such motion.

 The corpus delicti may be established by circumstantial evidence, Winslow v. State, 76 Ala. 42, and may be shown by evidence from which only a reasonable inference that the crime has been committed may be drawn by the jury, the proved facts and circumstances being considered together. Warren v. State, Ala.App., 25 So.2d 51 [1]; Kozlowski v. State, Ala.App., 27 So.2d 811.[2] Two elements must be present, first, a criminal act, and second, the defendant's agency in the production of the act. Mills v. State, 17 Ala.App. 493, 85 So. 867. In our opinion the evidence presented by the State was amply sufficient for the jury to infer the presence of the two above-mentioned essential elements necessary to establish the corpus delicti and the court's action in denying appellant's motion was proper. Desilvey v. State, 245 Ala. 163, 16 So.2d 183.

The defense in the trial below consisted of testimony which if believed would establish an alibi for the appellant at the time of the murder of the deceased, and also of the testimony of some dozen character witnesses.

The testimony of some five of these character witnesses was to the effect that

---

[1] Ante, p. 273. [2] Ante, p. 453.

they had lived in the same communities with appellant for substantial periods of time, that they knew his general reputation in such communities, and that same was good. On cross-examination of these witnesses it was developed that J. V. Porter based his estimate of appellant's character on the fact that he had heard appellant's employer say he was a good worker, and further that "everybody I knowed said he was all right," though he could not remember specifically any one who had discussed appellant's reputation, while John Sanderson, Bone Tilley, M. W. Harris, and Walter Matthews had never heard appellant's character discussed either pro or con.

After development of the above bases on which these five posited their character testimony, the court in each instance on motion of the solicitor excluded the testimony of the above witnesses respectively, to which action of the court the appellant duly reserved an exception.

■ In all criminal prosecutions the accused may offer evidence of his previous good character, not only where doubt exists on other proof, but even to generate reasonable doubt of his guilt. Bogle **v.** State, 27 Ala.App. 215, 169 So. 332; Lee v. State, 23 Ala.App. 403, 126 So. 183. While the testimony of all of the above-mentioned character witnesses except Porter is clearly negative in character, it has long been established that absence of discussion of a person's character in no way vitiates or affects the privilege of those acquaintances who have lived for substantial periods of time in the same community, and who would ordinarily have had the opportunity to have heard his character discussed, from testifying as to the accused's good character. This for the reason that "the best character is that which is least discussed." The only predicate necessary is that the character witnesses, from opportunity, know the accused's character. Hadjo v. Gooden, 13 Ala. 718; Childs v. State, 55 Ala. 28; Hussey v. State, 87 Ala. 121, 6 So. 420; Glover v. State, 200 Ala. 384, 76 So. 300; Riley v. State, 216 Ala. 536, 114 So. 12; Puckett v. State, 24 Ala.App. 217, 133 So. 63; Dyess v. State, 224 Ala. 610, 141 So. 662.

■ In our opinion, and particularly in light of the circumstantial nature of the evidence presented by the State, the trial court erred in excluding the testimony of the above character witnesses.

As before stated, Jordan Hankins, a witness for the State, testified that he recognized appellant and deceased in the Ford roadster being driven toward the scene of this crime. On cross-examination he was asked by appellant's counsel if he had not testified before the grand jury that he did not recognize any of the occupants of this car. The court sustained the State's objections to this line of questioning, to which ruling appellant duly excepted.

■■ Since an affirmative answer would have tended to contradict or impeach Hankins' testimony given at the trial, the court erred in sustaining the objections to such questions. The fact that the alleged contradictory statement was made before a grand jury in no way excepts it from the general rule that a witness may be cross-examined as to prior statements made by him contradictory to statements made in his testimony in the pending trial. Smith v. State, 183 Ala. 10, 62 So. 864; Riley v. State, 21 Ala.App. 655, 111 So. 649; Sec. 87, Title 30, Code of Alabama, 1940.

Sherman Box, a member of the grand jury, was called as a witness by the appellant, apparently to impeach the witness Hankins. Mr. Box testified that Hankins when a witness before the grand jury had said he did not recognize any of the occupants of any of the cars that passed him while walking down the road on the Sunday in question.

On cross-examination of the witness Box, and apparently in an effort to test his recollection the solicitor asked if he remembered what any other witnesses before the grand jury testified, to which Box answered "Not for certain." The record then shows the following:

"Q. Do you remember the Swanigan woman? A. No sir.

"Q. You remember about her testifying that Mrs. Williams came to her house about four o'clock that afternoon hunting a negro to help her—said she was nearly crazy that

Hob had come all covered with blood, he had killed somebody or had a fight—and Jim Freeman didn't have a scratch on him?

"By Mr. McCollum: Object Because, 1st, the question calls for irrelevant, immaterial, illegal and incompetent testimony; 2nd, because the question calls for hearsay testimony; 3rd, because the question calls for prejudicial evidence or testimony; 4th, because the question calls for an opinion or conclusion of the witness; 5th, because the question calls for a hearsay statement of a third party, which statement was not a part of the res gestae; 6th, the question calls for evidence which will prejudice the jury against the defendant and sheds no material light on the innocence or guilt of the defendant and is an attempt to show his guilt by hearsay testimony.

"By the Court: Overrule.

"By Mr. McCollum: Except, and move to exclude the answer on the same grounds assigned for objection to the question.

"A. Yes sir, I believe I do."

█ The prejudicial character of such testimony is obvious. The Assistant Attorney General contends it was admissible on the theory of testing the accuracy of Box's memory. It is conceded that the general rule is that wide latitude is allowed on cross-examination of a witness to test his memory, and the extent of such examination is within the discretion of the trial court. See Ala. Dig., Witnesses, Key No. 329 for numerous cases. The rule however is not absolute, and cannot be applied to the injury of the substantial rights of a defendant. Williamson v. State, 20 Ala. App. 394, 102 So. 485.

█ Testimony before a grand jury, in so far as a defendant is concerned, is hearsay. While it is permissible to allow a grand juror to testify to statements made before the grand jury by a witness which are contradictory to the testimony of the witness given during the trial, such testimony of the grand juror should be limited to its impeaching phases. To permit the State, under the guise of testing the recollection of the grand juror witness by cross-examination to parade before a petit jury prejudicial hearsay testimony violates a fundamental constitutional right of the accused to be confronted by the witnesses against him, and by indirection accomplishes a result that could not be reached directly.

The record also shows the following occurrence:

"After the jury had deliberated for sometime the jury returned to the courtroom and the following took place:

"By the Judge: Have you reached a verdict?

"By the Foreman of the Jury: We have not. We would like to know if the jury can reduce the charge to manslaughter and give the defendant less than ten years?

"By the Court: No, under my instructions the least that you can give the defendant if you find him guilty is ten years.

"By Mr. McCollum: We except and do not wish to waive our previous objection to the Judge's charge that the jury cannot find the defendant guilty of manslaughter and that they cannot give him less than ten years."

█ The evidence produced by the State in this case was entirely circumstantial. Actually the method and the circumstance by and under which this deceased came to his death were entirely inferential. No person testified who witnessed the killing. As stated in Hornsby v. State, 94 Ala. 55, 10 So. 522, 527—"We think, when the evidence sustaining the charge is wholly circumstantial, and the character of the wound causing the death tends to show it was done by cutting or stabbing, and the relations of the parties to each other existing as shown in this case, the safer rule is to charge on the law of manslaughter, and to let the jury say whether there are facts which would reduce the crime to a lower degree than murder."

█ Writing to this same question, Justice Brown, now of our Supreme Court, but then a member of this court, in Jones v. State, 13 Ala.App. 10, 68 So. 690, 696, said: "But, where the evidence which proves the killing rebuts the presumption

of malice, or affords room for an inference to be drawn by the jury that tends to rebut the presumption, *or where the evidence is wholly circumstantial, and the character of the weapon, the circumstances attending the homicide, and the motive therefor rest in inferences to be drawn by the jury from the circumstances proven,* the court should give in charge to the jury the law on all degrees of intentional homicide. Fowler v. State, 161 Ala. 1, 49 So. 788; Hornsby v. State, 94 Ala. [55,] 66, 10 So. 522; Hall v. State, 40 Ala. [698,] 706; Reeves v. State, 186 Ala. 14, 65 So. 160. The reason for this is clear. In such cases malice, which is an essential ingredient of murder, must be inferred from the character of the weapon used and the circumstances attending the homicide, and, where there is evidence justifying an inference that the killing was not prompted by malice, or where the nature and character of the weapon and the circumstances attending the homicide rest in inference, it is the province of the jury, and not of the court, to pass on the evidence and entertain the inference of malice or not, as, in their judgment, the whole evidence may warrant. Hornsby v. State, supra; Smith v. State, 68 Ala. [424,] 430." (Italics ours.)

In our opinion, in view of the jury's inquiries, it was error for the court, under the doctrine of the Hornsby and Jones cases, supra, to limit its instructions to the jury to murder in the second degree.

The record in this case is voluminous, and the ruling of the court was invoked innumerable times. Many of the 107 specifications of error argued in appellant's brief pertained to the admission or rejection of evidence. In most of these instances either the question was answered before any objection was interposed, or else no exception to the court's ruling was taken. No reviewable question arose in these instances. The remaining points we do not think likely to arise at another trial of this case, and we refrain from discussing them in order to not unduly extend the length of this opinion.

For the errors above mentioned this case must be reversed, and it is so ordered.

Reversed and remanded.