84 So.2d 782

Ola Mae BRYSON

v.

STATE.

8 Div. 426.

Court of Appeals of Alabama.

April 26, 1955.

Rehearing Denied June 30, 1956.

The following charge was refused to defendant:

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

Bradshaw, Barnett & Haltom, Geo. E. Barnett, Jr., Florence, for appellant.

HARWOOD, Judge.

This appellant's trial under an indictment charging murder in the first degree resulted in her conviction of manslaughter in the first degree and an imposition of a sentence of ten years in the penitentiary.

The appellant and the deceased had been married, but at the time of this killing had been separated for some two months.

The evidence presented by the State tended to show that on the night of the homicide the appellant and deceased came to a cafe operated by Annie Butler. They ordered sandwiches, and Annie went into the back part of the cafe to prepare the food. Through a window in the partition between the kitchen and the public area of the cafe she observed the appellant and deceased standing near a Rockola. The appellant had an open knife held near deceased's chest. The pair however consumed the food and after awhile left the cafe.

The appellant resided with her mother. A neighbor, Hattie Weems, testified that on the night of the killing she was on her porch. She heard a male voice say: "You just don't want to do right." She then saw the appellant and deceased walking arm in arm. They went onto the porch of appellant's home and she heard the appellant say she had to go to bed. The deceased insisted that she go with him to his house and go to bed. At this time the appellant's mother came to the screen door and called appellant in. The appellant began cursing, and her mother tried to get out on the porch but the door was latched on the outside.

The argument between appellant and deceased as to the sleeping arrangements continued, and appellant during its course stabbed the deceased in the chest with a knife, from which wound he died in a short while.

Testifying in her own behalf, the appellant denied that she any time stood near a Rockola in Annie Butler's cafe, or that she placed a knife against deceased's chest. Appellant stated that the deceased had followed her to the cafe, and that she sat at a table with a man named "Dodie" and his wife. The deceased did not join them, and she ate nothing at the cafe.

The deceased followed her when she left the cafe, insisting that she was going to spend the night with him.

When they reached the porch of her home she found the screen door latched. As she would attempt to open the door the deceased would jerk her arm. This happened several times, and appellant saw the deceased put his right hand in his pocket and pull it out. It was then that she stabbed the deceased with a knife that she had in the pocket of her blue jeans, and had managed to get out and open during the argument.

Appellant's mother, who came to the screen door during the argument, gave testimony tending to corroborate that of the appellant.

Evidence was also introduced by the defense to the effect that on previous occasions the deceased had cut appellant and inflicted other injuries on her.

During the cross examination of defense witness, Sarah Sloss, mother of appellant, she testified that the deceased had jerked appellant with only one hand during the argument on the porch.

She was then asked if she had not testified before the grand jury that the deceased caught appellant's arm with both his hands, and if she did not demonstrate his actions by taking hold of the solicitor's arm with both her hands.

A series of questions were asked along this line. At one point the court asked if the solicitor intended using the members of the grand jury as impeaching witnesses. The solicitor first replied he did not, but later stated he did not know whether he would impeach her or not.

The court overruled appellant's objections to the questions, and to all the witness denied she had so testified.

Counsel for appellant argue that the court erred in its rulings in the above instances in view of the solicitor's first announcement that he had not intended to summon the grand jury members as impeaching witnesses.

There is no merit in this contention.

It is elemental that a witness may be impeached by prior contradictory statements. Testimony before a grand jury furnishes no exception. Williams v. State, 32 Ala.App. 597, 28 So.2d 731; Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837.

In order to introduce the impeaching witnesses, a predicate must be laid through the witness being examined. If the witness denies making the statement covered by the predicate, then the impeaching witnesses may be introduced.

However, the witness' answers to the predicatory question or questions cannot be known in advance. The witness may admit such contradictory statements, which answer in effect may tend to impeach him in and of itself. Or, again, he might admit the contradiction and attempt to explain it and harmonize it with his present testimony. State v. Marler, 2 Ala. 43.

Further, questions as to prior statements are admissible, not only for the purpose of showing contradictions, but also to test the witness' recollection. Montgomery v. State, 2 Ala.App. 25, 56 So. 92. See also Baker v. State, 209 Ala. 142, 95 So. 467.

In Grasselli Chemical Co. v. Davis, 166 Ala. 471, 52 So. 35, 37, our Supreme Court made the following observations in reference to cross examination of witnesses as to contradictory statements they may have made:

"The eighth, ninth, thirteenth, and fourteenth assignments of error are to the action of the court in sustaining objections to the questions, by defendant to the plaintiff, on cross-examination, as to whether he had not made statements, when he was examined under the statute, contradictory to what he had just testified. The only objection offered was that the writing was the best evidence. The court erred in sustaining this objection. It is always the privilege of a party on cross-examination to test the accuracy of the statements of the witness, by asking him if he has not on a particular occasion made a certain statement contradictory to his present testimony. The fact that the previous testimony was in writing does not change the rule, nor is it necessary to introduce the writing in the first instance. If the witness requests to see the writing, it would have to be shown to him; but the defendant could not introduce it for any purpose.—Birmingham Ry., Light & Power Co. v. Oden, 164 Ala. 1, 51 So. 240."

The record shows the following during the argument of the solicitor to the jury:

"The defendant objects to the argument of the attorney (Mr. Potts) 'Where is Dodie?', and move to exclude it on the ground that he is just

as available to the State as to the defendant.

"By the Court: When a witness is available to either side, you can't comment on it.

"By Mr. Potts: We didn't know him, didn't hear of him until the trial and didn't know where he was or what his name was.

"The defendant moves the court to declare a mistrial because of the fact that the attorney for the State persisted in arguing to the court in the presence of the jury after the court sustained the objection as to where Dodie was. Motion overruled. Defendant excepted."

We interpret the court's statement: "When a witness is available to either side, you can't comment on it" as ruling with the defense in its objection. The statement by the solicitor immediately following we interpret as being made by way of explanation to the court. We do not feel that appellant's substantial rights were probably injured in this instance.

The record further shows the following during the argument of the solicitor:

"Defendant objects to and moves to exclude the statement by the solicitor that 'J. B. Bryson, the deceased, did not have an opportunity to have a trial before a jury like you good men'; it is illegal and prejudicial. Objection and motion overruled. Defendant excepts."

The above statement does not, in our opinion, exceed the limits of allowable argument. Polk v. State, 31 Ala.App. 473, 18 So.2d 698. The evidence is undisputed that deceased died from a knife wound inflicted by the appellant. It is therefore not only a reasonable inference from the evidence, but a necessary conclusion that the deceased was executed by appellant without a trial. Whether appellant was justified in such execution was for the jury.

The unnumbered refused charge requested by appellant was fully covered in the court's oral charge. No error resulted in its refusal.

Appellant's requested charge No. 36 was refused without error. The charge was misleading in that the undisputed evidence shows that the killing took place on the porch of appellant's home. There was no duty on her to retreat. This principle was enunciated to the jury in appellant's requested charges 27 and 28 which were given by the court.

The charge is faulty also in that no threats were shown by the evidence. The doctrine permitting the appellant to act more promptly in view of her knowledge of deceased's violent character was explained to the jury in appellant's given charge No. 10 A.A. Under the evidence this was all appellant was entitled to have the jury instructed upon.

Affirmed.

CARR, P. J., not sitting.