319 So.2d 750

**David GRAY, alias**

**v.**

**STATE.**

**7 Div. 367.**

Court of Criminal Appeals of Alabama.

Oct. 10, 1975.

**132**

C. R. D. Burns, Jr., Gadsen, for appellant.

William J. Baxley, Atty. Gen., and Randolph P. Reaves, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Robbery—36 years imprisonment.

Edward Robinson testified that on December 30, 1974, on returning home from work, he was attacked by two men who were waiting inside his home. He identified one of the men as Junior Williams, a neighbor, and identified the other as the appellant.

Robinson further testified in part a s follows:

"A. Well, David Gray hit me across the head with a club that they had made just about this long. It wasn't completely round. It was kind of beveled like. They had trimmed the handled so it wouldn't slip out of his hand. He hit me four or five times across the head with it just as hard as he could hit, but Junior grabbed my hand and pulled me on in the house and said 'come on in here' and I said these very words, I said 'Junior, what in the devil are you all doing in my house?'

"Q. All right, then what happened?

"A. Well, he seen he couldn't knock me out. Junior run up under me and snatched my feet out from under me and I fell across in front of my fireplace. Well, David grabbed this rifle, my own rifle, and held it just about that close to my head and he said 'shut up, shut up.' Said 'be quiet or we will kill you.' "

He made a very positive in-court identification of the appellant. At the time of the robbery, he did not know the appellant's name, but learned it later. He also identified Gray in a police lineup. Robinson testified that the two assailants robbed him of his watch, his color television set, two shotguns, a .22 caliber rifle, his billfold and his 1967 Cadillac automobile.

On March 4, 1975, the date of the trial, the appellant filed a motion for change of venue on the ground that pretrial newspaper articles from December 31, 1974, through January 4, 1975, "have so prejudiced any possible jury that this defendant cannot receive a fair trial in this County." The trial court heard arguments on the motion and overruled it. Copies of three newspaper articles were admitted into evidence on such hearing.

I

The appellant contends the trial court erred in overruling his motion for a change of venue.

The instant indictment was filed on February 4, 1975, the appellant was arraigned February 20, 1975, and the motion for a change of venue was not filed until the day of trial, March 4, 1975. We do not think the trial court committed error in overruling the motion. It could be said that the motion was not made as early as practicable before trial as required by Title 15, § 267, Code of Alabama 1940, and that no reason was shown by the appellant for failure to file prior to the actual date of the trial. *Byers v. State*, 105 Ala. 31, 16 So. 716 (1894); *Kelly v. State*, 160 Ala. 48, 49 So. 535 (1909). It could also be said that the application lacked specificity as required by the statute.

The trial court admitted the appellant's exhibits into evidence and heard his

attorney's argument and overruled the motion without specifying his grounds. While the trial court may have assigned any number of reasons for so ruling, it is obvious to this Court that on the merits of the motion, absolutely no evidence was presented to the trial court to support the granting of the motion.

The newspaper articles objectively reported the commission of a cold and calloused crime. The articles in the record do not carry inflammatory headlines, nor do they editorialize on the facts in a manner to inflame the community or create an atmosphere of prejudice. The three articles were published in the Gadsden Times on December 31, 1974, and on January 2 and 3, 1975. The trial was held two months later and there is no showing of other articles published in the interim that had any prejudicial effect upon the jury.

■ It should be specifically noted that none of the three articles relied upon by the defense in any way mention the appellant by name or otherwise describe him. The mere fact that publicity relating to the commission of a crime has been dispersed does not, in itself, indicate that a defendant cannot obtain a fair trial. *Beecher v. State*, 288 Ala. 1, 256 So.2d 154 (1971). The appellant failed to meet the burden of proof required to obtain a change of venue and the trial court properly overruled such motion. *Aycock v. State*, 50 Ala.App. 130, 277 So.2d 404 (1973). *Acoff v. State*, 50 Ala.App. 206, 278 So.2d 210 (1973).

II

■ Later in the trial, the appellant's attorney moved for a mistrial on the grounds of an article published in the Gadsden Times dated March 4, 1975, which was introduced into evidence as Defendant's Exhibit 4. That article concerned the conviction of Edward Williams, Jr., the accomplice of the appellant. Counsel for the appellant claims the following sentence in that article prejudiced his client:

"Trial of Williams companion in the case is also set for this week."

Counsel for appellant argued that since the jury had not been sequestered it had read the article.

We do not find the newspaper article to be prejudicial in any way to the appellant. It does not name him or otherwise identify him. The mere fact that the jury was not sequestered is no proof that any member read the article or was in any way prejudiced by it. The jury was not sequestered by agreement of the appellant and his counsel. The appellant made no showing nor offer to show any prejudice resulted from the article, but instead relies upon the mere publication of the article and his deduction that it may have been read and may have caused prejudice. This is insufficient to put the trial court in error. *Aycock v. State*, supra.

III

■ The appellant objected to admission of evidence concerning his identification from a lineup which took place at the Gadsden Police Department. We find no error on the part of the trial court in this regard for several reasons. We do not find the lineup to have been tainted or held under such circumstances to show it to be unfairly constituted, neither was it conducted in a suggestive manner as to be conducive to mistaken identification. The testimony of the officers present and of Mr. Robinson clearly indicate that no suggestion was made to him in any manner prior to his identification of the appellant. Neither can the appellant complain of denial of counsel on a preindictment lineup. In any event, he signed a waiver of right to counsel prior to participating in the lineup. While the appellant's attorney, during trial, contested the waiver as having been given involuntarily, the evidence does not support such contention.

Testimony was taken on this point in chambers outside the presence of the jury

wherein the appellant testified in pertinent part as follows:

"A. . . . So when I come out there he handed me this paper and told me what it was and I told him that I wanted to have an attorney present before I signed it. He told me it wasn't necessary for me to have an attorney present, for me to go on and sign it. *So I took the paper and signed it because I knowed that I hadn't did nothing; that it didn't make no difference if they did put me in a line-up. So I signed it.*" (Emphasis supplied.)

Officer Don Longshore, an investigator with the Etowah County Sheriff's Department, then testified as follows:

"A. Well, I explained his rights to him just like it is right here and he signed it.

"Q. When you say 'explained your rights' what rights did you explain?

"A. That he had the right to an attorney and he was doing it on his free voluntary will.

"Q. All right, sir, and did you ask him if he understood that? Did you explain?

"A. Yes.

"Q. He said he understood it?

"A. Right.

"Q. And then he voluntarily signed it?

"A. Right."

Captain Richard Moore of the Gadsden Police Department, who conducted the lineup, testified as to the procedure used. He further testified that he was present when Deputy Longshore advised the appellant of his rights, that the appellant signed the waiver of the right to counsel, and he witnessed it. Therefore, even if there had been a constitutional right to counsel on a preindictment lineup, the trial court certainly had substantial evidence to support his finding that the appellant had knowingly and voluntarily waived counsel.

We find no error committed by the trial court relative to the lineup identification and admission of evidence concerning such. *Thomas v. State*, 50 Ala.App. 227, 278 So. 2d 230 (1973); *Houston v. State*, 49 Ala. App. 403, 272 So.2d 610 (1973); *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L. Ed.2d 411 (1972); *Elrod v. State*, 281 Ala. 331, 202 So.2d 539 (1967).

## IV

During the course of the trial, the defense called Edward Williams, Jr., as a witness. Williams admitted participating in the robbery of Ed Robinson, who is also known by the nickname of Attalla Red. He testified as to the details of breaking into Robinson's home and robbing him when he returned home from work. Williams testified, however, that David Gray was not with him on that occasion, that ". . . me and this other dude got together and went in his house." He stated that the appellant was not involved in the robbery and only assisted him at a later time in finding someone to purchase the stolen television set.

He testified that he had given the police a confession implicating David Gray as being his accomplice, and that he had only used Gray's name, ". . . in order for that other dude to leave town." He named the "other dude" as being Leroy Williams.

On cross examination, he was questioned at length concerning Leroy Williams. Although the witness stated that he had known the appellant a year, and had only just met Leroy Williams once prior to the robbery, he nevertheless had implicated his friend Gray in the robbery in order to allow the relative stranger, Leroy Williams, to leave town. It is obvious that the jury did not believe this story anymore than this Court does.

The witness could not give any description of Leroy Williams, did not know where he lived, did not know where he grew up, did not know where he went to school, did not know where he was em-

ployed, did not know whether he was married, and could not give any distinguishing characteristics about him because, ". . . I wasn't looking at him that hard."

The appellant testified that Leroy Williams was a cousin of Ed Williams, Jr. Ed Williams, however, stated that Leroy Williams was no kin to him and was not his first cousin. Later, upon being told that the appellant had stated otherwise, he changed his testimony stating that Leroy Williams could be his cousin, however, he did not know whether or not he was his cousin.

It was brought out on cross examination that Ed Williams, Jr., alias, Junior Williams, had just been tried that morning in the same circuit court on charges of robbery, burglary and assault growing out of the same facts in the instant case and had been sentenced to 35 years in the penitentiary.

On the next day of the trial, the State recalled Williams to the stand and the following transpired:

"Q. Mr. Williams, I will ask you if yesterday when you went back up to your jail cell upstairs if you had occasion to talk with one of the deputy sheriff's on your way back up to the jail?

"A. By who?

"Q. Deputy sheriff James Hayes. Did you talk with him on the way back up to your cell yesterday?

"A. No, I didn't talk to no James Hayes. I don't even know no James Hayes.

"Q. A Deputy Sheriff that took you back to your cell yesterday. Did you talk with a deputy sheriff?

"A. No, I did not talk to no deputy.

"Q. You didn't talk to anybody?

"A. No."

The State then called Deputy Sheriff James Hayes in rebuttal and the following occurred:

"Q. All right, sir, I will ask you if yesterday after Edward Williams testified in this case if you had occasion to take him back upstairs to his cell?

"A. Yes, sir, I did.

"Q. I will ask you if there was a conversation between you and he?

"A. Yes, sir.

"Q. All right, sir, and if you would please tell us that conversation.

"MR. BURNS: Judge, I object to any conversation that transpired. Mr. Williams was no longer in the courtroom. So therefore that would be hearsay.

"DEPUTY DISTRICT ATTORNEY CARNES: Your Honor, this is for the purpose of impeaching the witness who has denied he even had a conversation.

"THE COURT: Overrule.

"MR. BURNS: We except to your Honor's ruling.

"A. On the elevator going back up he was laughing and I said 'man, you are laughing a lot, taking this easy to have done got 35 years.' He said 'what the hell, I will be out in 10 years.' So I said 'well, was Gray with you or not when all this happened?' And he said 'well, hell yeah. No need of both of us going.'

"DEPUTY DISTRICT ATTORNEY CARNES: Your witness.

"MR. BURNS: We move that all that be stricken from the record. The fact that we don't have the right to cross-examine the declaring of that statement. It's hearsay.

"THE COURT: Overrule.

"MR. BURNS: We except to your Honor's ruling."

The appellant claims that such testimony was hearsay and denied him the right to

cross examine the declarant. Of course, the witness Williams had just left the witness stand when Deputy Hayes was put on in rebuttal, and Williams could have easily been recalled to the stand by the appellant and examined concerning the incident.

 It should be noted that the testimony in question was not presented by the State to prove its case in chief. It was the defense that called Williams to the stand to testify that someone other than the appellant committed the robbery with him. If he immediately left the courtroom and made a statement to a deputy sheriff inconsistent with his prior statement on the witness stand, it is our opinion the State had a right to introduce the inconsistent statement for the purpose of impeachment of Williams as a witness. The contradictory statement of Williams goes to his credibility as a witness, and for that purpose, was admissible. 98 C.J.S. Witnesses § 614; *Sims v. Struthers*, 267 Ala. 80 (at p. 87), 100 So.2d 23 (1958); 19A Alabama Digest, Witnesses ☞391.

The general rule is that a witness, who on cross examination denies making a statement of a material fact, may be impeached by use of another witness to whom the inconsistent statement was made. To introduce such contradictory statement, a predicate must be laid. We believe by asking Williams if he talked with Deputy Hayes the day before on his way back to the cell, and by Williams denying talking to Hayes or anyone else at that time and place, a proper predicate was laid to call Deputy Hayes for impeachment purposes. *Bryson v. State*, 38 Ala.App. 517, 84 So.2d 782 (1956).

As stated in *Lanier v. State*, 43 Ala.App. 38, 179 So.2d 167 (1965), by the late Presiding Judge Price of this Court:

"A witness may be cross examined as to whether he made certain statements before the grand jury which are contradictory to those made on the trial. An affirmative answer tends to impeach him. If he denies making the prior statement

members of the grand jury may be called as impeaching witnesses. *Bryson v. State*, 38 Ala.App. 517, 84 So.2d 782. The sustaining of the state's objection to the above question was reversible error. *Davis v. State*, 30 Ala.App. 562, 10 So.2d 35; *Williams v. State*, 32 Ala.App. 597, 28 So.2d 731."

If the question put to the witness is not collateral or irrelevant, the rule is as stated in *Frazier v. State*, 48 Ala.App. 210 (at p. 213), 263 So.2d 511 (1972):

"A witness may not ordinarily testify to acts or statements made by third parties which occur outside the presence or hearing of the defendant. 29 Am.Jr.2d, Evidence, Section 610. However, for impeachment purposes, a statement may be offered to prove that one made a particular assertion, rather than to prove the truth of the statement, and the evidence is not hearsay. . . ."

The proper remedy for the appellant would have been to request the trial court to instruct the jury to only consider Deputy Hayes' testimony for impeachment purposes, which he did not do. *Sims v. Struthers*, supra.

Affirmed.

All the Judges concur.