On a trial on an indictment charging the defendant with murder in the first degree *Page 1059 
of John Otis Menifee, a jury found appellant guilty of murder in the second degree and fixed his punishment at imprisonment for 99 years. The court sentenced him accordingly.
Appellant asserts as the first issue presented by him on appeal, "Whether the Trial Court committed reversible error in denying the Defendant's Plea in Abatement, Motion to Quash the Venire, and Motion for a New Trial, based on systematic exclusion of minorities from the Grand Jury and Petit Jury selection." A lengthy hearing thereon was conducted by the trial court, at which eight witnesses testified. There was considerable factual testimony that the selection of jurors for the jury rolls of Lee County was conducted without regard to race, notwithstanding defendant's contention throughout the hearing that there was a systematic exclusion of Negroes. There was no factual testimony by any witness in support of his contention. Defendant's entire contentions seem to stem largely from the proven fact that the grand jury of eighteen persons that returned the indictment against defendant, as well as others indicted during one of the grand jury sessions in 1977, consisted of only two Negroes. Throughout the hearing there was an obvious fusion of the contention that there was a systematic exclusion of blacks with the contention that there was an undue disparity in the smaller percentage of blacks on the jury rolls and on some venires of grand juries when compared to a larger percentage of adult blacks living in Lee County. A continuation of the mingling of the two contentions is demonstrated by the first paragraph of appellant's argument as to issue one:
 "The defendant proved to the Court that not only was there a disproportionment (sic) number of minorities (Blacks) on the specific Grand Jury which brought the indictment (T. 48, 49, 51, 52), but also there was a pattern over the years of such systemic [systematic] exclusion (T. 76). In the examination of the Grand Jury Foreman, he stated there was `possibly a third' of the venire from which the Grand Jury was selected who were members of the minority race (Blacks) (T. 48, 51). Yet, Dr. Robinson testified further that only two of eighteen members of the Grand Jury were of the same minority."
 "Further, it was shown that the make-up of the county population is such that Black minority constitutes 27.8 percent of the total (T. 7). The aforementioned facts, that of the Black population of the county being 27.8 percent and that of the make-up of the Grand Jury being 2 of 18 or 11 percent, in and of themselves, constitute a prima facie case of purposeful discrimination Black v. Curb, 464 F.2d 165 (5th Cir. 1974). In such a showing, the burden of explaining the disparity shifts to the state. Black v. Curb, supra. `The state must explain the disparity or establish that the excluded persons are not qualified.' Black v. Curb, 422 F.2d 656 (5th Cir. 1970). . . ."
Black v. Curb, supra, does not hold that the difference between the percentage of the "Black population of the county" and the "make-up of the Grand Jury" constitutes a "prima facie case of purposeful discrimination." The quoted statement of Black v.Curb is referable to the gross disparity between a smaller ratio of the number of blacks, eligible as to age for jury service, when compared with the ratio of such blacks to all people living in the county at the time eligible as to age for jury service. The particular contention of appellant is not supported either by Black v. Curb, supra, or any other case he has cited. It is refuted, by analogy at least, by Swain v.Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the only difference being that in Swain the contrast was between the proportionate representation on a specific petit jury venire and representation in the population instead of, as here, between the representation on a particular grand jury and representation in the total population.
The reason stated is applicable to and is dispositive of appellant's contention that the "venire from which the defense had to select the trial (petit) jury consisted *Page 1060 
of 17 percent Black minority (T. 149) and as such as continuing proof that the said systematic exclusion of the Black minority continues unto the present day." Another contention that a "further example of the continuing systematic exclusion of the Black minorities is shown by the blatant and invidious act of the District Attorney in that the first five strikes made by the State were to exclude all remaining blacks from the venire is fully answered thus:
 "In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reason for the exercise of his challenges in any given case. . . ." Swain v. Alabama, 380 U.S. 202, 221, 85 S.Ct. 824, 836, 13 L.Ed.2d 759, 773.
In his effort to prove that there had been a systematic exclusion of minority jurors from the jury roll, defendant introduced the testimony of some witnesses familiar with the process of supplying the jury roll with the names of qualified jurors during a part of all of the years 1976, 1977, 1978, and 1979 (the year in which defendant was tried). None supported appellant's contention. All of the factual testimony on the point was to the effect that no person was excluded solely on the basis of race or sex. The trial court was not in error in ruling against appellant as to any contention that there was a systematic exclusion of minorities from the roll of jurors from which grand juries and petit juries were obtained, that there was no selection from the jury rolls or box in the drawing therefrom of the names or cards of persons to serve on either grand juries or petit juries, and that the names of persons to be placed on the jury rolls were obtained largely from voters' lists, drivers' license lists, church rolls, civic club rolls and telephone directories without regard to race. The trial court was not in error in ruling against defendant on the subject.
Code of Alabama 1975, § 12-16-171 provides for an oath to be administered to the foreman of a grand jury. In moving to quash the indictment on the ground that an oath was not given to the foreman of the grand jury that returned the indictment against defendant, defendant called on the District Attorney as a witness. He said:
 "Your Honor, Mr. Jones and Mr. Williams, I have been District Attorney since October of '73 and I am able to testify with reasonable certainty as to what took place during the empanelling of the Grand Jury in the Fall of 1977, because the procedure for this has been exactly the same since the Fall of 1973, and exactly the same as it is today.
 "Once the Grand Jury is selected, the Foreman is administered an oath by the Court separately. The Grand Jury as a whole is administered an oath by the Court; and it was done in the Fall of 1977."
The contention of appellant that the foreman of the grand jury was not administered the oath prescribed is not supported by the transcript.
Code of Alabama 1975, § 12-16-190, which has been statutory law of Alabama since Code 1923, § 8665, provides that in "all counties having over 50,000 population, there should be empanelled not less than four grand juries in every year." Appellant complains that no more than three grand juries were empanelled for the year in which the indictment against defendant was returned. Appellant makes an effort to show that this allegedly "flagrant violation of statutory law . . . demonstrates a continued and systematic exclusion of the right of minorities and blacks from participating in the judicial process." We do not agree, and the cited case of Baxley v.Strawbridge, 52 Ala. App. 685, 296 So.2d 779, cert. denied,292 Ala. 506, 296 So.2d 784 (1974) is not on the subject and is inapposite.
Another contention of appellant is that the trial court "committed reversible error in denying the defendant's plea in abatement due to the Lee County Sheriff's office violating Section 12-16-89, Code of Alabama, 1975," which provides: *Page 1061 
 "If the sheriff or any deputy shall negligently fail to summon any person to serve as a juror when he is commanded to summon, he shall be held and deemed guilty of a contempt of court and shall be fined not more than $100.00 in every case where the person did not serve, and he may also be imprisoned in the county jail for not more than five days.
 "The return of any such person as `not found' shall be prima facie evidence of negligence on the part of the sheriff or deputy making the return, and he shall be punished by the court unless the court is reasonably satisfied from evidence produced that he was not negligent."
Appellant argues that a document introduced in evidence on the hearing of the plea in abatement "indicates" that "for the week of September 17, 1977 [the week for which jurors were summoned from whom the grand jury indicting defendant was obtained] that 42 of 130 were `not found' or a total of 32 percent of the jurors summoned." The evidence shows that jurors were summoned by mail and that the envelopes contained the legend, "Do not forward out of Lee County." No complaint is made to the effect that use of the mails should not have been made in the process of summoning jurors. The cited statutory law has been in every Code of Alabama since 1909 as a part of Acts 1909, No. 227. Another part of said Act, now Code 1975, § 12-16-81, provides:
 "If the sheriff fails to summon any jurors drawn or any person summoned fails or refuses to attend the trial or there is any mistake in the name of any person drawn or summoned, none nor all of these grounds shall be sufficient to quash the venire or continue the case."
Appellant argues in his brief:
 "It is felt by the defendant that a great percentage, of the not founds, a higher percentage than that of the racial percentage of the county, is black and therefore partially accounting for the low percentage of blacks in the jury venire and on the Grand Jury."
Appellant had an opportunity to prove, if he could, what the defendant "felt" as just stated, if what he "felt" were correct, but he did not do so. Any charge, express or implied, that there was a discrimination against blacks by the United States Postal Service or by the employment by any entity of the services of the United States Postal Service should not be judicially accepted as self-proving. The "prima facie evidence" provision of Code 1975, § 12-16-89 is referable, as the context shows, to a possible contempt proceeding against the sheriff, or any one or more of his deputies, when cited for contempt for negligent failure to summon any one or more jurors.
There was an absence of any substantial evidence to the effect that defendant could not obtain "a fair and impartial trial" in Lee County, which is the criterion for the grant of the motion for change of venue, which the trial court denied. Code of Alabama 1975, § 15-2-20. It was shown that there was substantial publicity as to the alleged crime soon after it occurred. The existence of widespread publicity does not in and of itself indicate that a defendant cannot obtain a fair trial.Beecher v. State, 288 Ala. 1, 256 So.2d 154 (1971); Gray v.State, 56 Ala. App. 131, 319 So.2d 750 (1975); Botsford v.State, 54 Ala. App. 482, 309 So.2d 835 (1974), cert. denied,293 Ala. 745, 309 So.2d 844 (1975); Jenkins v. State, Ala.Cr.App.,339 So.2d 133, cert. denied, 339 So.2d 137 (1976); Turk v.State, Ala.Cr.App., 348 So.2d 878 (1977); McLaren v. State, Ala.Cr.App., 353 So.2d 24, cert. denied, 353 So.2d 35 (1977). The burden is upon the defendant to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot reasonably be expected in order for him to obtain a change of venue. Peoples v. State, Ala.Cr.App.,338 So.2d 515 (1976); Witherspoon v. State, Ala.Cr.App.,356 So.2d 743 (1978).
Appellant's final contention is that the trial court "committed reversible error in refusing to give three requested charges" which are: *Page 1062 
 "1. Burden on the defendant as to self-defense is to offer only such evidence as will generate reasonable doubt.
 "2. The State has the burden of proving beyond a reasonable doubt that the defendant was not free from fault in bringing the difficulty which led to the fatal wounding of the decedent where the defendant claimed that the shooting was necessary in his own defense.
 "3. The only burden resting on the defendant under a plea of self-defense is to offer such evidence as will, when considered with the whole evidence, generate in the minds of the jury a reasonable doubt of guilt."
The substance of both charge 1 and charge 2 is covered by the following portion of the court's oral charge:
 "In reference to the plea of self-defense . . . the burden of proof is never on the defendant to establish his innocence or to disprove the facts necessary to establish the crime for which he is charged. If the evidence, any and all of it, after considering it all, raises in the mind of the jury a reasonable doubt as to the defendant's guilty [sic], he should be acquitted."
In its oral charge the court comprehensively instructed the jury as to the burden upon the State to prove defendant's guilt by the evidence beyond a reasonable doubt and upon the essential elements of a defense of self-defense. The principle stated in defendant's charge 2 was substantially covered by the court's oral charge, including particularly the following:
 "And if a person acts under such conditions and circumstances as I have set out, the burden of satisfying the jury beyond a reasonable doubt from the evidence, that he was not free from fault in bringing on the difficulty is on the State and if not shown, then the jury should acquit him."
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.